**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **JANE DOE, (C.C.),** an individual,<br><br>*Plaintiff*<br><br>**v.**<br><br>**SNEHA CORPORATION D/B/A DELUX INN; FORT WORTH HOSPITALITY, LTD D/B/A SUPER 7 INN; HARAYATANA, LLC D/B/A SUPER 8 BY WYNDHAM; SUPER 8 WORLDWIDE, INC.; WYNDHAM HOTELS & RESORTS, LLC; WYNDHAM HOTELS & RESORTS, INC.; ASHUTOSH CORPORATION D/B/A MOTEL 6; AND G6 HOSPITALITY, LLC,**<br><br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 1:26-CV-199** |

**<u>PLAINTIFF'S ORIGINAL COMPLAINT</u>**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Jane Doe (C.C.)[1] files this Original Complaint against Sneha Corporation D/B/A Delux Inn; Fort Worth Hospitality, Ltd. D/B/A Super 7 Inn; Harayatana LLC D/B/A Super 8; Super 8 Worldwide, Inc.; Wyndham Hotels & Resorts, LLC; Wyndham Hotels & Resorts, Inc.; Ashutosh Corporation D/B/A Motel 6; and G6 Hospitality, LLC (collectively "**Defendants**"). For cause of action, Plaintiff shows the Court as follows:

[1]As detailed herein, C.C. is a sex-trafficking survivor who was forced to perform multiple sex acts, endured other physical violence, and sustained tremendous physiological harm, Thus, C.C. should be permitted to proceed anonymously. *See, e.g., Doe v. G6 Hosp. LLC*, No. 4:22-CV-198-SDJ, 2022 U.S. Dist. LEXIS 119975, at *7 (E.D. Tex. 2022) (allowing a similar sex-trafficking survivor to proceed anonymously).

## I.
## SUMMARY OF THE ACTION

1.1 Plaintiff Jane Doe (C.C.) files this civil lawsuit seeking compensation for the harm she suffered as a result of the sex trafficking she endured in Fort Worth hotels owned, operated, maintained, and controlled by Defendants, Defendants' agents, and Defendants' employees.

1.2 Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[2]

1.3 Commercial sex act means any sex act, on account of which anything of value is given to or received by any person.[3] Traffickers or "pimps" use threats, violence, manipulation, lies, debt, bondage, fraud, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

1.4 Sex trafficking has become a public health crisis that has reached epidemic proportions in the United States. It is now widely recognized, including by Congress and many state legislatures, that combating sex trafficking requires more than just criminal penalties for pimps and sex buyers (*i.e.,* "Johns").

1.5 Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("**TVPRA**"), 18 U.S.C. §1581, et seq, has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

1.6 In 2008, Congress recognized the need to extend liability beyond sex buyers and sellers and intentionally expanded the scope of the TVPRA to reach those who—while not

---

[2] 18 U.S.C. § 1591; 22 U.S.C. § 7102.
[3] 18 U.S.C. § 1591(e)(3).

criminally liable under the TVPRA—financially benefit from participation in a venture that they know or *should know* engages in criminal sex trafficking.

1.7 As discussed herein, Defendants derived financial benefit from facilitating sex trafficking by providing venues where traffickers could exploit victims, including victims like Jane Doe (C.C.), with minimal risk of detection or interruption.

1.8 Defendants continued supporting traffickers, including Jane Doe (C.C.)'s traffickers, despite evident and apparent signs of widespread and ongoing sex trafficking at its hotels. Specifically, from approximately May 2024 to September 2024 (the "Relevant Trafficking Period"), C.C. was forced to engage in commercial sex acts at the following hotels located along a roughly four (4) mile stretch of Fort Worth's South Freeway: (1) **Delux Inn** – 4451 South Fwy, Fort Worth, TX 76115; (2) **Super 7 Inn** – 4433 South Fwy #136, Fort Worth, TX 76115; (3) **Motel 6** – 4201 South Freeway; Fort Worth, TX 76115; and (4) **Super 8 by Wyndham** – 6500 South Fwy; Fort Worth, TX 76134.[4] *See infra* pp. 9–15.

1.9 Defendants were, therefore, knowingly receiving a benefit from participation in a venture that Defendants knew or should have known was engaged in sex trafficking.

## II. PARTIES & SERVICE OF PROCESS

2.1 Plaintiff **Jane Doe (C.C.)** is a natural person who resides in and is domiciled in Las Vegas, Clark County, Nevada.

2.2 Defendant **Sneha Corporation D/B/A Delux Inn** ("Sneha Corporation") is a corporation organized under the laws of the State of Texas with its principal place of business in Fort Worth, Texas. Service is affected by serving a copy of the Summons and Complaint on Sneha Corporation's registered agent in Texas for service of process, Aakash N. Patel, at 4451 South

[4] The Delux Inn and Super 7 Inn are adjacent to one another and separated only by a fence.

Freeway, Fort Worth, TX 76115. Upon information and belief, at all relevant times, Sneha Corporation owned, operated, controlled, and/or managed the Delux Inn hotel located at 4451 South Freeway, Fort Worth, TX 76115 (hereinafter the "**South Freeway Delux Inn**").

2.3 Defendant **Fort Worth Hospitality, LTD D/B/A Super 7 Inn** ("Fort Worth Hospitality") is a limited partnership organized under the laws of the State of Texas with its principal place of business in Haltom City, Texas. Service is affected by serving a copy of the Summons and Complaint on Fort Worth Hospitality's registered agent in Texas for service of process, Vasant Ranchnod, at 6401 Airport Fwy., Haltom City, TX 76117. Upon information and belief, at all relevant times, Fort Worth Hospitality owned, operated, controlled, and/or managed the Super 7 Inn hotel located at 4433 South Freeway #136, Fort Worth, TX 76115 (hereinafter the "**South Freeway Super 7**").

2.4 Defendant **Harayatana, LLC D/B/A as Super 8 by Wyndham** ("Harayatana"), a Super 8 by Wyndham franchisee, is a limited liability company organized under the laws of the State of Texas with its principal place of business in Fort Worth, Texas. Service is affected by serving a copy of the Summons and Complaint on Harayatana's registered agent in Texas for service of process, Chirag P. Patel, at 1815 E. Landcaster Ave., Fort Worth, TX 76103. Upon information and belief, at all relevant times, Harayatana owned, operated, controlled, and/or managed the Super 8 by Wyndham hotel located at 6500 South Freeway, Fort Worth, TX 76115 (hereinafter the "**South Freeway Super 8**") pursuant to a franchise agreement with Defendants Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.

2.5 Defendant **Super 8 Worldwide, Inc**. is a corporation organized under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey. Service is affected by serving a copy of the Summons and Complaint on Super 8 Worldwide's registered

agent in Texas for service of process, Corporate Creations Network, Inc., at 2595 N. Dallas Parkway, Suite 350, Frisco, TX 75034.

2.6 Defendant **Wyndham Hotels & Resorts, LLC** is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey. Service is affected by serving a copy of the Summons and Complaint on Wyndham Hotels & Resorts, LLC's registered agent in Texas for service of process, Corporate Creations Network, Inc., at 2595 N. Dallas Parkway, Suite 350, Frisco, TX 75034.

2.7 Defendant **Wyndham Hotels & Resorts, Inc.** is a corporation organized under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey. Service is affected by serving a copy of the Summons and Complaint on Wyndham Hotels & Resorts, Inc.'s registered agent in Delaware for service of process, Corporate Creations Network, Inc., at 1521 Concord Pike, Suite 201, Wilmington, De 19803.

2.8 Upon information and belief, either directly or through the acts of predecessors for which they are responsible, Defendants Super 8 Worldwide, Inc.; Wyndham Hotels & Resorts, LLC; and Wyndham Hotles & Resorts, Inc. owned, operated, controlled, and/or managed the South Freeway Super 8 through the Wyndham/Super 8 by Wyndham franchising system.

2.9 Defendant **Ashutosh Corporation D/B/A Motel 6** ("Ashutosh"), a Motel 6 franchisee, is a corporation organized under the laws of the State of Texas with its principal place of business in Fort Worth, Texas. Service is affected by serving a copy of the Summons and Complaint on Ashutosh's registered agent in Texas for service of process, Tarunkumar M. Desai, at 4201 South Freeway, Fort Worth, TX 76115. Upon information and belief, at all relevant times, Ashutosh owned, operated, controlled, and/or managed the Motel 6 hotel located at 4201 South Freeway; Fort Worth, TX 76115 (hereinafter the "**South Freeway Motel 6"**) pursuant to a

franchise agreement with Defendant G6 Hospitality, LLC.

2.10 Defendant **G6 Hospitality, LLC** is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Carrolton, Denton County, Texas. Service is affected by serving a copy a copy of the Summons and Complaint on G6 Hospitality's LLC's registered agent in Texas for service of process, Gogency Global, Inc. at 1601 Elm Street, Suite 4360, Dallas, TX 75201. G6 Hospitality, LLC's principal place of business is located at the following address: 4001 International Parkway, Carrollton, TX 75007. Upon information and belief, at all relevant times, G6 owned, operated, controlled, and/or managed the South Freeway Motel 6 through the Motel 6 franchising system.

## III.
## JURISDICTION & VENUE

3.1 This Federal District Court has original, subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332, which provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." As seen in paragraphs 2.1–2.10, there is complete diversity of citizenship between Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3.2 This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA. This Court also has supplemental jurisdiction over Plaintiff's Texas law claims under 28 U.S.C. § 1367(a), as these claims are so related to Plaintiff's TVPRA claims that they form part of the same case or controversy. *See infra* pp. 55–60 (Plaintiff's Texas law claims).

3.1 Venue is proper in this district and division because Defendant G6 Hospitality, LLC's principal place of business is in Carrolton, Denton County, Texas – which is within the

Eastern District of Texas–Sherman Division. *See* 28 U.S.C. §§ 1391(b)(1), 1391(c)(2). Additionally, all other Defendants are entities who are deemed to reside in the State of Texas because they are subject to the Court's personal jurisdiction. *See id.*

3.2 This Court has specific personal jurisdiction over Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh because they (1) maintain their principal places of business in the State of Texas and (2) owned, operated, controlled, and/or managed hotels in the State of Texas where Plaintiff was trafficked during the Relevant Trafficking Period. Accordingly, exercising jurisdiction over these Defendants is fair, reasonable, and consistent with traditional notions of fair play and substantial justice.

3.3 This Court has specific personal jurisdiction over Defendant G6 Hospitality, LLC because they (1) maintain their principal place of business in Carrolton, Denton County, Texas – which is within the Eastern District of Texas–Sherman Division and (2) owned, operated, controlled, and/or managed the South Freeway Motel 6 in the State of Texas where Plaintiff was trafficked during the Relevant Trafficking Period. Accordingly, exercising jurisdiction over Defendant G6 Hospitality, LLC is fair, reasonable, and consistent with traditional notions of fair play and substantial justice.

3.4 This Court has specific personal jurisdiction over Defendants Super 8 Worldwide, Inc.; Wyndham Hotels & Resorts, LLC; and Wyndham Hotels & Resorts, Inc. (collectively, the "**Wyndham Franchisor Defendants"**) because Plaintiff's TVPRA claims arise out of and relate to the Wyndham Franchisor Defendants relationship with Defendant Harayatana, LLC d/b/a Super 8 by Wyndham ("Harayatana"). Upon information and belief, Harayatana is a franchisee of the Wyndham Franchisor Defendants and Harayatana maintains its principal place of business in the State of Texas. The Wyndham Franchisor Defendants participation in a business venture

with Harayatana (who owned, operated, controlled, and/or managed the South Freeway Super 8 during the Relevant Trafficking Period) occurred, in substantial part, in Texas because:

a. Upon information and belief, Harayatana actively sought out a franchising relationship by contacting the Wyndham Franchisor Defendants from Harayana's principal place of business in Texas.

b. Upon information and belief, the negotiation, execution, and acceptance of the franchising agreement between Harayatana and the Wyndham Franchisor Defendants (hereinafter the "South Freeway Super 8 Franchising Agreement") primarily occurred from Harayatana's principal place of business in Texas.

c. Upon information and belief, Harayatana and the Wyndham Franchisor Defendants agreed that ongoing performance of the South Freeway Super 8 Franchising Agreement would take place, in part, in Texas.

d. Upon information and belief, the South Freeway Super 8 Franchising Agreement required Harayatana to report information about the hotel to the Wyndham Franchisor Defendants, including information about all incidents involving safety, security, public relations, or serious injury to persons or property that occur at, or involve, the South Freeway Super 8 in Texas, including those involving sex trafficking victims like Jane Doe (C.C.).

e. Upon information and belief, the required notices submitted by Harayatana to the Wyndham Franchisor Defendants pursuant to the South Freeway Super 8 Franchising Agreement were submitted from the South Freeway Super 8 in Texas.

f. Upon information and belief, the Wyndham Franchisor Defendants dictated policies at the South Freeway Super 8 in Texas related to safety, security, human trafficking, employee training and response, as well as other subjects.

g. Upon information and belief, reservation information for rooms at the South Freeway Super 8 in Texas, including rooms used to force sex trafficking victims like Jane Doe (C.C.) into commercial sex acts, passed through a system operated and managed by the Wyndham Franchisor Defendants.

h. Upon information and belief, payment information for rooms at the South Freeway Super 8 in Texas, including rooms used to force sex trafficking victims like Jane Doe (C.C.) into commercial sex acts, passed through a system operated and managed by the Wyndham Franchisor Defendants.

i. Upon information and belief, property management software used by Harayatana to manage the South Freeway Super 8 in Texas, including managing rooms used to force sex trafficking victims like Jane Doe (C.C.) into commercial sex acts, passed through a system operated and managed by the Wyndham Franchisor Defendants.

j. Upon information and belief, pursuant to the South Freeway Super 8 Franchising Agreement, the Wyndham Franchisor Defendants received royalty payments from Harayatana that originated from Harayatana's principal place of business in Texas.

k. Upon information and belief, Harayatana's operation of the South Freeway Super 8 in Texas was controlled and/or influenced by many policies set and enforced by the Wyndham Franchisor Defendants.

3.5 For these reasons, the exercise of personal jurisdiction over the Wyndham Franchisor Defendants is fair, reasonable, and consistent with the traditional notions of fair play and substantial justice.

## IV.
## FACTUAL BACKGROUND

### 1. Jane Doe (C.C.) was a Victim of Unlawful Sex Trafficking at Hotels Owned Operated, Managed, and Controlled by Defendants.

4.1 In approximately May 2024, Jane Doe (C.C.) was deceived and forced into sex trafficking. At the time, C.C. was attempting to escape an abusive relationship involving a severe alcoholic and sought refuge at a domestic violence shelter in the Fort Worth area. While at the shelter, C.C. encountered a woman who falsely represented herself as a fellow domestic violence victim. Upon information and belief, this individual was affiliated with a sex trafficking and drug operation. Using her influence at the shelter, she arranged for C.C. to be removed from the facility. She then continued to pose as C.C.'s friend and introduced C.C. to the man who would become

her primary trafficker, telling C.C. that this person would help her and provide stability.[5]

4.2 Relying on these representations, C.C. communicated with her primary trafficker, who offered to provide her with a hotel room and food. He directed C.C. to meet him at the Delux Inn located at 4451 South Freeway, Fort Worth, Texas 76115. Unbeknownst to C.C., this meeting was a setup. Shortly after arriving at the hotel, C.C. was raped at gunpoint by her primary trafficker in a guest room at the Delux Inn and was told that she would be his "biggest money maker." After this initial assault, C.C., who had no money and had recently escaped a violent relationship, was forced to engage in commercial sex acts by her primary trafficker and his criminal associates. The primary trafficker repeatedly beat C.C., raped C.C., and threatened her at gunpoint. As a result, C.C. feared both her trafficker and for her life if she attempted to escape.

4.3 From approximately May 2024 to September 2024 (the "Relevant Trafficking Period"), C.C. was forced to engage in commercial sex acts at the following hotels (collectively the "Subject Hotels") located along a roughly four (4) mile stretch of Fort Worth's South Freeway: **(1) Delux Inn** – 4451 South Fwy, Fort Worth, TX 76115; **(2) Super 7 Inn** – 4433 South Fwy #136, Fort Worth, TX 76115; **(3) Motel 6** – 4201 South Freeway; Fort Worth, TX 76115; and **(4) Super 8 by Wyndham** – 6500 South Fwy; Fort Worth, TX 76134. *See infra* Figure 1.

4.4 During the Relevant Trafficking Period, Jane Doe (C.C.), her primary trafficker, and his criminal associates regularly rented rooms at the Subject Hotels. C.C. stayed at each hotel for varying periods—ranging from one to three days, and at times up to a full week—before being transported to another hotel on the South Freeway. C.C. and other trafficking victims frequently arrived at the Subject Hotels with visible signs of physical abuse, including prominent bruising on

[5]Due to legitimate safety concerns, including fear of retaliation, Plaintiff cannot fully disclose in this publicly accessible Complaint identifying information about her primary trafficker or his criminal associates.

their faces and bodies. Despite these trafficking "red flags," staff and management at the Subject Hotels continued to rent rooms to C.C. and her traffickers without inquiry or intervention. Additionally, on certain occasions, C.C.'s trafficker forced his human trafficking victims (including C.C.) to rent rooms themselves, paying in cash and using their own identification, which the trafficker retained and reclaimed immediately after the transaction was complete.

4.5 Jane Doe (C.C.)'s trafficking had profound effects on her, consistent with well recognized "red flags" of human trafficking in the hospitality industry, that were obvious and readily apparent to the staff and management of the Subject Hotels. These "red flags" included:

- Rooms frequently paid for by C.C.'s main trafficker or one of his criminal associates with cash.
- C.C. and two to three other trafficked women would often share the same hotel room. At times, up to fifteen trafficked women were crammed into a single room when they were not being forced to engage in commercial sex acts in a nearby hotel room.
- Housekeeping refused to enter the rooms or were blocked from entering rooms by either C.C.'s main trafficker or one of his criminal associates.
- There was heavy foot traffic of adult men visiting hotel rooms at all hours for short durations at time.
- Sex paraphernalia (*e.g.*, condoms and lubricant), drugs, and drug paraphernalia (*e.g.,* used needles) were regularly left in hotel rooms.[6]
- Multiple adult men would visit rooms who were not registered hotel guests.
- C.C. and other trafficked women had visible, prominent bruising from physical abuse, a clear deteriorating appearance, and showed an obvious fearful demeanor. Especially when they personally paid for rooms in cash as they clearly appeared emotional, nervous, and scared.
- C.C. and other trafficked women avoided eye contact with the staff and management at the Subject Hotels.

[6]C.C. and other trafficked women were often coerced into drug use and developed drug dependencies to numb the extreme trauma associated with kidnapping and forced commercial sex acts.

- C.C. and other trafficked women had interactions with traffickers reflecting control, coercion, and intimidation. For example, C.C.'s main trafficker and his criminal associates would stand outside the hotel rooms to prevent the kidnapped women from escaping.

4.6 C.C.'s primary trafficker acted even more brazenly at the South Freeway Delux Inn and the South Freeway Super 7, as those properties were in worse condition and had less corporate oversight than the nearby South Freeway Motel 6 and Super 8. To be clear, open and obvious human trafficking also occurred at those hotels. *See infra* Figure 3.




**Figure 1 – Google Maps® Image Showing the Close Proximity Between the Subject Hotels**




**Figure 2 – Cellphone photograph taken by C.C. on August 24, 2024 inside a hotel room at the South Freeway Delux Inn where she was being trafficked.[7]**

[7]Consistent with the rotation pattern described above, C.C. was repeatedly cycled among the Subject Hotels in August 2024. Accordingly, upon information and belief, C.C. was trafficked at each of the four (4) Subject Hotels during that month. Notably, photograph evidence (Figure 2) confirms that C.C. was being trafficked at the Delux Inn on August 24, 2024, at approximately 11:53 AM, as reflected by the time and date stamps.




**Figure 3 – Cellphone photograph taken by C.C. of a room key card from the South Freeway Super 8 where she was trafficked.**

4.7 However, at the South Freeway Delux Inn and Super 7, the hotels' extremely dilapidated condition—particularly in comparison to the marginally better maintained South Freeway Motel 6 and Super 8—created substantial pressure on management to maximize occupancy and revenue despite obvious criminal activity occurring on the premises. This incentive allowed C.C.'s primary trafficker and his associates to shamelessly operate a drug and sex trafficking enterprise on hotel property with complete impunity. For example, C.C.'s primary trafficker and his associates would stand outside hotel rooms **<u>openly carrying firearms</u>** to prevent trafficked women, including C.C., from escaping.[8] Moreover, employees and management at the

[8] At the South Freeway Motel 6 and Super 8, C.C.'s primary trafficker and his associates would still stand outside the hotel rooms; however, they did not openly carry firearms.

South Freeway Delux Inn and Super 7 were both permitted and encouraged to engage in commercial sex acts with C.C. and other trafficked women for free.[9] In return, employees and management at the South Freeway Delux Inn and Super 7 allowed C.C.'s primary trafficker and his associates to continue openly operating their drug and sex trafficking enterprise on hotel property during the Relevant Trafficking Period.

4.8 During the Relevant Trafficking Period, C.C.'s primary trafficker even resided for extended periods at the South Freeway Delux Inn with his wife and children, effectively using the property as a base of operations. While based there, the trafficker regularly transported C.C. and other victims to nearby hotels—including the South Freeway Super 7, Motel 6, and Super 8—where they were forced to engage in commercial sex acts. For example, at the South Freeway Super 7, C.C.'s primary trafficker forced C.C. and other victims to engage in sex acts with the hotel manager when they failed to earn enough money from "Johns" to pay for their rooms.[10]

4.9 Thankfully, through the heroic assistance of a North Texas anti-human trafficking organization, Jane Doe (C.C.) was able to escape her traffickers in or around late September to early October 2024 and successfully relocate to Las Vegas, Nevada.[11]

**2. The Hotel Industry's Role in Sex Trafficking and Defendants' Knowledge of the Serious Problem.**

4.10 The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what Defendants knew or should have known regarding the trafficking at their hotel properties, including the trafficking of Jane Doe (C.C.).

4.11 Today, sex slavery is pervasive in the United States, and hotels are the primary

---

[9] This conduct constitutes a "commercial sex act" because Sneha Corporation and Fort Worth Hospitality hotel staff and management received a thing of value—commercial sex acts involving C.C. and other trafficked women—that would normally require payment to C.C.'s traffickers. *See* 18 U.S.C. § 1591(e)(3).
[10] *See id.*
[11] *See supra* Footnote 5 regarding information about this organization.

place where it happens.[12] For years, sex traffickers have been able to reap their profits with little risk when attempting to operate within hotels.[13] In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[14] Hotels have been found to account for over 90% of commercial exploitation of children.[15]

4.12 Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking.

4.13 Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, and EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[16]

4.14 Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of, include learning to identify warning signs and indicators of sex trafficking, such as:[17]

- Individuals show signs of fear, anxiety, tension, submission, and/or

---

[12] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-us-slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id.*

[13] *See Human Trafficking in the Hotel Industry*, Polaris Project (Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; *see also* Eleanor Goldberg, *You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic*, Huffington Post (June 27, 2026), https://www.huffpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victims-life_n_57714091e4b0f168323a1ed7.

[14] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hotel Industry*, Cornell Hotel Report (Oct. 2015), https://humantraffickingsearch.org/wp-content/uploads/2019/05/Adoptingthecode.report.cornell.pdf.

[15] *See* Erika R. George and Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking and Modern Slavery*, 46 N.Y.U. J. Int'l L. & Pol. 55, 66-67 (2013).

[16] *See*, e.g., United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

[17] *See id.*

nervousness;

- Individuals show signs of physical abuse, restraint, and/or confinement;
- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;
- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;
- Individuals lack freedom of movement or are constantly monitored;
- Individuals avoid eye contact and interaction with others;
- Individuals have no control over, or possession of, money or identification;
- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;
- Individuals have few or no personal items—such as no luggage or other bags;
- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;
- A group of girls appears to be traveling with an older female or male;
- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;
- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;
- Possession of bulk sexual paraphernalia such as condoms or lubricant;
- Possession or use of multiple cell phones; and
- Possession or use of large amounts of cash or pre-paid cards.

4.15 The relationship between a pimp and a prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, or coercion. It is also well

understood that "prostitution," "sex trafficking," and "child sex trafficking" involve a single common denominator – the exchange of sex for money.[18]

4.16 The definition of sex trafficking in the TVPRA under 18 U.S.C. §1591(a)(1) incorporates the definition of commercial sex act. Defendants knew or should have known of the practical and legal association between commercial sex and sex trafficking in a hotel environment.[19] Thus, Defendants knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking.[20]

4.17 All Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties, when enacting and enforcing policies and procedures applicable to those hotels, and when training, educating, and supervising the staff of that hotel.

4.18 The most effective weapon against sexual exploitation and human trafficking is education and training.[21] The Blue Campaign, in a Human Trafficking Response Guide available on the Department of Homeland Security website, concluded that:

> As a hospitality industry professional, you are in a unique position to recognize and report potential human trafficking violations. You play an important role because you regularly interact with guests and the greater public in general. You may have employees, coworkers, or subcontractors who are victims of forced labor. Hotels and motels are also major locations where traffickers force sex trafficking victims to provide commercial sex to paying customers. Victims may be forced to stay at a hotel or motel where customers come to them, or they are required to go to rooms rented out by the customers. Traffickers may

---

[18] *See, e.g.*, Lara Gerassi, *From Exploitation to Industry: Definition, Risks, and Consequences of Domestic Sexual Exploitation and Sex Work Among Women and Girls,* J. OF HUMAN BEHAVIOR IN THE SOCIAL ENVIRONMENT (Dec. 2015), https://pmc.ncbi.nlm.nih.gov/articles/PMC4696486/pdf/nihms-723344.pdf ("In its simplest form, the [TVPRA] indicates that this crime occurs when an adult is induced by force, fraud, or coercion to perform a sex act for money or anything of financial value.").

[19] *See* Polaris, *A Roadmap for Systems and Industries to Prevent and Disrupt Human Trafficking—Hotels & Motels* (July 2018), https://polarisproject.org/wp-content/uploads/2018/08/A-Roadmap-for-Systems-and-Industries-to-Prevent-and-Disrupt-Human-Trafficking-Hotels-and-Motels.pdf (concluding that "Hotels are a crucial piece of the infrastructure necessary to facilitate human trafficking….").

[20] *See id.* at p. 20 (trafficking indicators in hotels & motels, like excessive condoms in trash cans and short visits from different men, overlap with indoctors commonly associated with prostitution).

[21] *See id.* at p. 27.

also use hotels when transporting victims to new locations.[22]

4.19 This same conclusion is echoed by others who seek to eliminate sex trafficking in the hospitality industry, including the American Hotel Lodging Association (AHLA), a major trade group that represents the U.S. hospitality industry. Through AHLA's No Room for Trafficking Initiative, the organization "continuously updates and expands its training programs aimed at increasing the identification and reporting of suspected human trafficking."[23] In reference to companies like Defendants, the Blue Campaign observed that "hotels and motels can be especially attractive locations for all forms of human trafficking" as traffickers "often take advantage of the privacy and anonymity offered by the hospitality industry."[24] Thus, when companies like Defendants fail to raise awareness of and/or fail to implement measures to prevent human trafficking, they become an indirect and unintentional conduit (or, in the case of the South Freeway Delux Inn and Super 8, an active participant) for sexual abuse.

4.20 Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, franchisees, owners, operators, hotel management, and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain to continue generating revenue from traffickers, without taking reasonable steps to identify and prevent trafficking in its hotels, is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

4.21 In sum, Defendants had a responsibility to adopt, implement, and adequately enforce policies to avoid facilitating sex trafficking and to train hotel staff and management to identify "red flags" of sex trafficking and report suspected human trafficking to law enforcement

[22] *See* https://www.dhs.gov/sites/default/files/2025-06/25_0605_bc_hospitality-toolkit-v02-508.pdf
[23] *See* AHLA Foundation, No Room for Trafficking Initiative, https://www.ahlafoundation.org/nrft/.
[24] *See* https://www.dhs.gov/sites/default/files/2025-06/25_0605_bc_hospitality-toolkit-v02-508.pdf.

and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline.[25]

### 3. Sex Trafficking Has Long Been Prevalent at Motel 6 Branded Properties, and the Motel 6-Affiliated Defendants Knew or Should Have Known About It.

4.22 Defendants' actual knowledge is *not* limited to a general awareness of the problem of sex trafficking in the hotel industry. Specifically, the Motel 6–affiliated Defendants (Ashutosh and G6 Hospitality, LLC) have known, well before the Relevant Trafficking Period, that sex trafficking was ongoing and widespread and Motel 6 branded properties – including the South Freeway Motel 6.

4.23 Motel 6 hotels are one of the five chains most frequently identified as a site of sex trafficking in federal criminal complaints.[26] For instance, a Los Angeles Motel 6 became such a hub for human trafficking and other criminal activity that G6–affiliated defendants settled a public nuisance lawsuit filed by the City of Los Angeles.[27] G6 Hospitality, LLC knew staff at its branded properties were facilitating sex trafficking and that it was generating revenue through policies that encouraged sex traffickers to operate at G6 brand properties. The settlement required the G6–affiliated defendants to change policies that were facilitating sex trafficking.[28] Based upon information and belief, Defendant G6 Hospitality, LLC has failed to adequately implement and enforce such changes.

4.24 Press releases from G6 Hospitality, LLC confirm that they knew that sex

---

[25]*See, e.g.,* Polaris, *A Roadmap for Systems and Industries to Prevent and Disrupt Human Trafficking—Hotels & Motels* (July 2018), https://polarisproject.org/wp-content/uploads/2018/08/A-Roadmap-for-Systems-and-Industries-to-Prevent-and-Disrupt-Human-Trafficking-Hotels-and-Motels.pdf (praising a hotel employee's report to the National Human Trafficking Hotline after observing a trafficked minor female wearing minimal clothing who also appeared under the influence).

[26]Sarah Meo and Louise Shelley, *Sex Trafficking and Hotels: Why there is a Need for Effective Corporate Social Responsibility* (Nov. 11, 2021), https://www.globalpolicyjournal.com/blog/11/11/2021/sex-trafficking-and-hotels-why-there-need-effective-corporate-social-responsibility ("There is a high correlation between the hotels named in federal criminal cases and in the hotel chains named as defendants in civil lawsuits. The most common hotels in active criminal court cases in 2020 were Motel 6, Super 8, Days Inn, Red Roof Inn, and La Quinta.").

[27]*Motel 6 pays $250,000 to settle human trafficking suit* (Aug. 31, 2017), https://www.cbsnews.com/news/motel-6-pays-250000-to-settle-human-trafficking-suit/.

[28]*Id.*

trafficking is a problem in the hotel industry and that they retained control over the responses of their branded hotels to this problem prior to the Relevant Trafficking Period.[29] Specifically, in response to this problem and related anti-trafficking efforts, G6 Hospitality, LLC announced in 2021 that they require franchise owners like Ashutosh to provide training regarding "how to spot the signs of and help prevent human trafficking."[30]

4.25 Unfortunately for Jane Doe (C.C.), the promises made by the Motel 6–affiliated Defendants (Ashutosh and G6 Hospitality, LLC) have proven empty. These Defendants have failed, at all levels, to take appropriate action in response to their knowledge of widespread and ongoing human trafficking in their hotels. Instead, they have continued financially benefiting by providing venues for the sexual exploitation of victims like Jane Doe (C.C.).

4.26 Upon information and belief, each of the Motel 6–affiliated Defendants (Ashutosh and G6 Hospitality, LLC) monitored criminal activity occurring at Motel 6 branded hotels and were aware of activity indicating commercial sex, sex trafficking, and/or related crimes occurring at those branded hotels, including the South Freeway Motel 6 where Jane Doe (C.C.) was trafficked.

4.27 Well before the Relevant Trafficking Period, sex trafficking was prominent at Motel 6 branded properties. Public information, including scores of news stories and online reviews, confirm both the widespread sex trafficking problem at Motel 6 branded hotels and certainly establishes that the Motel 6–affiliated Defendants (Ashutosh and G6 Hospitality, LLC) knew, or should have known, of the use of Motel 6 hotels for sex trafficking. Examples of notable press involving the frequent use of Motel 6 branded hotels for illegal activity, including sex

[29] *See* Press Release, G6 Hospitality, Human Trafficking Training Across 1500 Properties (Nov. 9, 2021), https://g6hospitality.com/human-trafficking-training-across-1500-properties/.
[30] *Id.*

trafficking, at Motel 6 locations across the United States include:

- In late 2003, a trafficker set up a sex trafficking venture at a Motel 6 in Connecticut in which two (2) young women were sold for sex eight (8) to ten times per day.[31]

- In April 2009, a sex trafficking venture operated out of a Motel 6 in Toledo, Ohio.[32]

- In approximately September 2011, sex traffickers set up an operation at a Motel 6 in Toledo, Ohio to sell fifteen (15) and sixteen (16) year old girls for sex.[33]

- From approximately 2012 through October 2014, two (2) men engaged in a criminal sex trafficking venture of children which operated in part out of a Motel 6 in Harvey, Illinois.[34]

- Police rescued an eighteen (18) year old girl from a sex trafficker in February 2012 at a Motel 6 in Portland, Oregon.[35]

- The Orange County Human Trafficking Task Force busted a criminal enterprise in December 2012 that was selling women for sex out of a Motel 6 in Anaheim, California.[36]

- The FBI investigated and arrested several individuals in December 2012 for the victimization and human trafficking of several young women and a juvenile at a Motel 6 in Madison, Alabama.[37]

- In approximately March 2013, traffickers began operating a sex trafficking venture out of Motel 6 locations in Bangor and Portland, Maine.[38]

---

[31] Amy Fine Collins, *Sex Trafficking of Americans: The Girls Next Door,* Vanity Fair (May 2011), https://www.vanityfair.com/news/2011/05/human-trafficking-201105.

[32] Five Toledoans Indicted On Sex Trafficking Charges, ABC7Chicago.com (Nov. 7, 2010), https://abc7chicago.com/archive/7771888/.

[33] Mark Reiter, *Two Toledoans Accused Of Juvenile Sex Trafficking*, The Blade (Jun. 1, 2010), https://www.toledoblade.com/Courts/2012/06/02/2-Toledoans-accused-of-juvenile-sex-trafficking-1.html.

[34] Press Release, U.S. Dept. of Justice, Two Aspiring Rappers Charged With Operating Sex-Trafficking Ring In Chicago And Suburbs (Jan. 15, 2016), https://www.justice.gov/usaondil/file/813771/download.

[35] Press Release, U.S. Dept. of Justice, Tacoma Pimp Sentenced To 25 Years For Sex-Trafficking Two Victims (Nov. 20, 2013), https://www.justice.gov/usao-or/pr/tacoma-pimp-sentenced-25-years-sex- trafficking-two-victims.

[36] *Suspects Busted in Anaheim Sex Ring,* ABC13 Eyewitness News (Dec. 5, 2012), https://abc13.com/archive/8909784.

[37] *FBI Investigates Human Trafficking At Madison Hotel,* WHNT News 19 (Dec. 7, 2012), https://whnt.com/2012/12/07/fbi-investigates-human-trafficking-at-madison-motel/.

[38] Danielle McLean, What Drives Maine Sex Traffickers' Inhumanity, Bangor Daily News Maine Focus (Sept. 12, 2016), https://www.bangordailynews.com/2016/09/12/bangor/what-drives-maine-sex-traffickers-inhumanity/.

- In October 2015, a man was sentenced to 21 years in prison for sex trafficking his 16-year-old girlfriend at a Motel 6 in 2013.[39]

- Beginning in approximately May 2013, a fifteen (15) year old runaway was trafficked for sex out of a Motel 6 in Baltimore, Maryland.[40]

- Police investigated a sex trafficker in March 2014 and ultimately charged him for his crimes including, but not limited to, selling a seventeen (17) year old girl for sex out of a Motel 6 in Roseville, Minnesota.[41]

- In May 2014, two (2) traffickers were arrested at a Motel 6 in Monterey, California after a twenty-one (21) year old woman escaped from their captivity.[42]

- In the summer of 2014, two (2) girls ages fifteen (15) and sixteen (16) were taken from a children's shelter by a sex trafficker and trafficked out of a Motel 6 in Cutler Bay, Florida.[43]

- In January 2015, A Las Vegas man was charged with sex trafficking two (2) victims, including a seventeen (17) year old girl, out of a Motel 6 in Rapid City, Nevada. [44]

- In February 2015, two (2) men were arrested for sex trafficking a fourteen (14) year old girl at a Motel 6 in Seekonk, Rhode Island.[45]

- In February 2015, a local law enforcement investigation resulted in the rescue of a fifteen (15) year old runaway from a Motel 6 near the Oakland, California

---

[39]*See* Press Release, U.S. Immigration and Customs Enforcement, Dallas gang member sentenced to 21 years in federal prison on child sex trafficking conviction (Oct. 21, 2015), https://www.ice.gov/news/releases/dallas-gang-member-sentenced-21-years-federal-prison-child-sex-trafficking-conviction.

[40]Anne Kramer, Man Faces Prison Time For Sex Trafficking Baltimore Teen, WBAL News Radio (Apr. 10, 2014), https://www.wbal.com/article/106578/2/man-faces-prison-time-for-sex-trafficking-baltimore-teen.

[41]Man, 25, Is Accused Of Trafficking Teens, Twin Cities Pioneer Press (Jun. 5, 2014), https://www.twincities.com/2014/06/05/man-25-is-accused-of-trafficking-teens-2/

[42] Felix Cortez and Amy Larson, Monterey Police: 2 Human Sex Traffickers Arrested After Victim Escapes Motel,KSBW8 (May 9, 2014), https://www.ksbw.com/article/monterey-police-2-human-sex-traffickers-arrested-after-victim-escapes-motel/1054172

[43]David Goodhue, Next Stop For Man Accused Of Sex Trafficking 2 Teens: Federal Court, Miami Herald (Sept. 2, 2015), https://www.miamiherald.com/news/local/news-columns-blogs/deadline-miami/article33360843.html.

[44]Las Vegas Man Charged With Human Trafficking In Rapid City, Argus Leader (Jan. 17, 2015), https://www.argusleader.com/story/news/crime/2015/01/17/las-vegas-man-charged-human-trafficking-rapid-22city/21922915/.

[45]Stephen Peterson, RI Man Gets Jail In Sex-Trafficking Case Involving Seekonk Motel (Oct. 28, 2016), http://www.thesunchronicle.com/news/local_news/ri-man-gets-jail-in-sex-trafficking-case-involving-seekonk/article_d7a25494-9d21-11e6-8f94-63e5c74facb3.html.

airport where she was being sex trafficked.[46]

- In March 2015, in North Charleston, South Carolina, a seventeen (17) year old girl was rescued from a Motel 6 by special agents from the United States Department of Homeland Security. The girl was sold for sex, beaten, and starved by a sex trafficker.[47]

- In March 2015, two men were arrested for sex trafficking a fifteen (15) year old girl at Motel 6 in Austin, Texas.[48]

- In March 2015, police arrested a man for sex trafficking a runaway seventeen (17) year old at a Motel 6 in Warwick, Rhode Island.[49]

- Over a fourteen (14) month period ending in approximately April 2015, the same Motel 6 in Warwick, Rhode Island had seventy-five (75) arrests on its property for crimes including sex-trafficking.[50]

- Seven (7) people were indicted in January 2016 by a Colorado grand jury for sex trafficking children from 2014 through the summer of 2015 out of hotels in Denver, Colorado, including a Denver area Motel 6.[51]

- In the summer of 2015, a woman was arrested at a Motel 6 in Great Falls, Montana where she was involved in sex trafficking a seventeen (17) year old girl.[52]

- A married couple was indicted in June 2015 for their roles in sex trafficking minor children ages seventeen (17), sixteen (16), and fifteen (15) years old out of a Motel 6 in Everett, Washington.[53]

[46] Emilie Raguso, Woman Charged In Berkeley Teen Sex Trafficking Case (Dec. 8, 2015), https://www.berkeleyside.com/2015/12/08/woman-charged-in-berkeley-teen-sex-trafficking-case

[47] Andrea Fisher, Woman Caught Up In Human Trafficking Ring Pleads Guilty (Aug. 29, 2016), https://www.greatfallstribune.com/story/news/local/2016/08/29/woman-caught-human-trafficking-ring-pleads-guilty/89566374/.

[48] Lindsay Bramson, Local Teen Saved from Sex Slavery; Two Charged, KXAN Austin (Mar. 6, 2015), https://www.kxan.com/news/local/austin/local-teen-freed-from-sex-slavery-two-charged/1049580764.

[49] Amanda Milkovits, Massachusetts Man Accused Of Trafficking Teen In Warwick Motel, NewportRI.com (Mar. 24, 2015), https://www.newportri.com/article/20150324/NEWS/150329666.

[50] Sarah Kaplan, Crime-Ridden Motel 6 In R.I. Will Hand Over Guest List To Police, The Washington Post (Apr. 28, 2015), https://www.washingtonpost.com/news/morning-mix/wp/2015/04/28/crime-ridden-motel-6-in-r-i-will-hand-over-guest-list-to-police/.

[51] Hsing Tseng, Seven Indicted By Colorado Grand Jury In Child Sex Trafficking Ring Bust, Fox 31 Denver (Jan. 6, 2016), https://kdvr.com/news/7-indicted-by-colorado-grand-jury-in-child-sex-trafficking-ring-bust/.

[52] Andrea Fisher, Woman Caught Up In Human Trafficking Ring Pleads Guilty (Aug. 29, 2016), https://www.greatfallstribune.com/story/news/local/2016/08/29/woman-caught-human-trafficking-ring-pleads-guilty/89566374/.

[53] Diana Hefley, County Investigating 45 Ongoing Human Sex Trafficking Cases, HeraldNet (Jun. 26, 2015), https://www.heraldnet.com/news/county-investigating-45-ongoing-human-sex-trafficking-cases/.

- In approximately July 2015, sex traffickers sold a fifteen (15) year old girl for sex at a Motel 6 in Pismo Beach, California.[54]

- In November 2015, a man was arrested at a Motel 6 in Ventura, California and was criminally charged with sex trafficking a fifteen (15) year old girl who was found with him.[55]

- According to a July 2023 lawsuit filed in the United States District Court–Eastern District of Texas—Beaumont Division, a plaintiff was sex trafficked at Motel 6 hotels in in Beaumont and Port Arthur.[56]

4.28 Ultimately, hundreds of traffickers involved with hundreds of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of Motel 6 branded properties.

4.29 Based upon information and belief, Defendant G6 Hospitality, LLC manages and monitors online reviews of Motel 6 hotel locations. For example:

- A 2010 TripAdvisor review out of Maine states "[M]y tour group and I figured that we should just stay here considering we were only staying here one night...There was dirtbags hanging around the pool area, and in the little yard area on the side. It looked as if all of the people who LIVED THERE were on drugs by the way they talked! Also during my stay there we saw a prostitute who must have been living there! She looked anorexic and came into the lobby telling the receptions that the cops might be coming so tell her if they show up! (i am not making any of this up) there was also 'a security guard' there waiting in the lobby all day and throughout the night making sure that the prostitute did not leave. They told the receptionist that the prostitute had 2 clients upstairs..."[57]

- A 2011 Yelp review in California states "…We paid to spend two nights, but after one night of being terrorized by pimps, prostitutes, "druggies" and homeless sleeping in cars we checked out…Our lasting memory should be the beautiful wedding, but instead it will be know as our night of terror. The

[54] Matt Fountain, Four Accused Of Pimping Out 15-Year-Old Girl In SLO Will Stand Trial, SanLuisObispo.com (May 5, 2016), https://www.sanluisobispo.com/news/local/article75832962.html.
[55]Fresno Man Sentenced To Prison For Pimping, Human Trafficking In Ventura County, Ventura County Star (Apr. 26, 2016), https://www.vcstar.com/story/news/local/communities/ventura/2016/04/26/fresno-man-sentenced-to-prison-for-pimping-human-trafficking-in-ventura-county/88714698/.
[56]*See* Provost Umphrey, Provost Umphrey Files Sex Trafficking Lawsuits against Owners of Local Hotel (July 25, 2023), https://provostumphrey.com/provost-umphrey-files-sex-trafficking-lawsuits-against-owners-of-local-hotel/.
[57]https://www.tripadvisor.com/Hotel_Review-g41519-d244102-Reviews-Motel_6_Boston_North_Danvers-Danvers_Massachusetts.html.

management is well aware of this and contribute to the problem by renting rooms to these terrorist....”[58]

- A 2011 TripAdvisor review from California states “…After watching the pedestrian and vehicle traffic for a period of time in the immediate area, it is apparent that the staff does not decline service to prostitutes w/ their protection (pimps) and drug dealers...While the affordable rates are the draw, once your there, you'll realize that Corporate hasn't paid attention to what occurs there or doesn't care as long as the money keeps coming in.”[59]

- A 2011 Yelp review from California states “Sheets and towels are frequently stained. Prostitution is a problem at this location, leading me to believe management and the staff (who are very friendly with the hookers) turns a blind eye to it to fill rooms or is being paid to look the other way….”[60]

- A2012 TripAdvisor review from Colorado states “…The first night, I received phone call after phone call, asking if I wanted "sexual favors" done to me. NO!!!!!! I also witnessed numerous drug dealings going on, and had my door banged on several times…Upon checkout, I explained issues to the clerk (the same person who checked me in) and she said, oh well….”[61]

- A 2012 Yelp review out of Dallas, Texas states “Do not stay here. Just stayed here and had some shadey stuff goin on…for one the hotel is a front for a prostitution ring the owners are running…I turned down one of the girls who in which called my room phone and asked if I wanted company and soon after had one with purple hair and what looked like her pimp at my door. I didn't answer I just watched through the peep hole. after they knocked for about 5 mins they left. As soon as I got comfortable I hear someone messing with my door and I look through the peep hole and they are back and are trying to use a key.. wooooow....”[62]

- A 2012 Yelp review from California states “what to say about the ‘no tell motel sex’ lol sad but true...my neighboor had people as in men in and out all night long if you get my drift, and when i called the front desk they said they would check it out and never did…..”[63]

- A 2012 Trip Advisor review out of Illinois states “I have recently been relocated with my job out here so looking for a place in glenview area. I stood

[58]https://www.yelp.com/biz/motel-6-santa-rosa-south-santa-rosa.
[59]https://www.tripadvisor.com/Hotel_Review-g32810-d78752-Reviews-Motel_6_Oakland_Airport-Oakland_California.html.
[60]https://www.yelp.com/biz/motel-6-salinas.
[61]https://www.tripadvisor.com/Hotel_Review-g33388-d83061-Reviews-Motel_6_Denver_CO_Downtown-Denver_Colorado.html.
[62]https://www.yelp.com/biz/motel-6-dallas-4.
[63]https://www.yelp.com/biz/motel-6-escondido?start=60

> here for a week. They had pimps and prostitution going on next door, under and across from me my whole week hear. I told front desk of the noise and loud banging they were making all day and night long. The front desk called one room where they were in the prostitute got rude with her you can hear it they were told to check out but the same day they checked back in next door to me. Staff here must be in on it some how cause I watched a pimp and a few under age girls go in and out a few rooms across and next to me all night long with custermers. The following morning around 5am I was woken to a girl in the hall yelling at the pimp who just hit her. It gets better I guess staff told them I made a complaint so then after they were banging on my door and getting rooms next to me as well making extreme noise so they can get me out...."[64]

4.30 This sampling of news stories, reviews, and other public information establishes that, at the time Jane Doe (C.C.) was trafficked at South Freeway Motel 6, G6 Hospitality, LLC knew or should have known that:

a. There was widespread and ongoing sex trafficking occurring at Motel 6 branded properties;

b. Sex trafficking was a brand-wide problem for Motel 6 originating from management level decisions at their corporate offices in Carrollton, Texas;

c. Motel 6 franchisees and hotel staff were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at their hotel properties and were facilitating sex trafficking at the branded hotel properties;

d. Motel 6's efforts, if any, to stop facilitating sex trafficking in their branded properties were not effective; and

e. Motel 6 and its franchisees were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring.

4.31 Despite the mounting evidence that sex trafficking at its properties was ongoing and growing, G6 Hospitality, LLC continued to earn revenue by continuing conduct that they knew or should have known would continue to facilitate that trafficking. Furthermore, having been on notice of the prevalence of sex trafficking generally at its hotels, G6 Hospitality, LLC (a

[64] https://www.tripadvisor.com/Hotel_Review-g36052-d243950-Reviews-Motel_6_Chicago_North_Glenview-Glenview_Illinois.html.

franchisor defendant) failed to take adequate steps to train staff and management of franchisees like Ashutosh to prevent such trafficking. Moreover, Defendants Ashutosh and G6 Hospitality, LLC were specifically aware that sex trafficking and other illegal activity was ongoing <u>at the South Freeway Motel 6</u> prior to, during, and after the Relevant Trafficking Period. Internet reviews for the South Freeway Motel 6, which upon information and belief both Ashutosh and G6 Hospitality, LLC manage and monitor, shows the pervasiveness of the illegal activity. *See, e.g.,* Figure 4 below (Google reviews of the South Freeway Motel 6).



guss hernandez
8 years ago on Google
1/5

The worst place cockroaches all over the place people selling drugs terrible smell of marijuana prostitution and dont respect the don't disturbing sing on the door i work night time need to sleep on the day and they call me i say please dont disturbing they say we dont care we need to clean the room. Not recommended 👎



codie golden
7 years ago on Google
1/5

I have stayed at this place twice now. First time was OK. But this last time I was kept awake all hours of the night due to the loud fighting screaming and door slamming from the rooms above me. If you don't mind a Drug haven have at it this is so the place for you.



James Montague
4 years ago on Google
1/5

Got there. Paid for a room and shortly after that I got my money back and left. There was people outside doing some shady stuff. Did not feel safe for my family and I to be there. I strongly recommend not ever going to this place ever.

Rooms 1.0 Service 1.0 Location 1.0

**Colton D**
2 years ago on Google

1/5

Pulled in the entrance, saw a woman walking around with no pants on, then made eye contact with a young man who brandished a handgun in his waistband. Lively monday night. Backed my truck and trailer out, didn't look back.

Response from the owner
2 years ago

After reading your review, we're disappointed to learn that we fell short of your expectations. We're constantly trying to improve in order to provide the best guest experience possible, so we appreciate your honesty.

In the meantime, we'll look into these issues and do our best to address them. Thanks again for your time, and we hope to see you again soon.

Nancy Y.

#Team6

**B Payne**
a year ago on Google

1/5

If I could give zero stars I would. This place was absolutely horrible. I had a **scary** encounter happen and the person in the office that night told me if I wanted the cops called I had to do it myself. Do not stay here. Dangerous area and the office obviously doesn't care.

**Rooms** 1.0 **Service** 1.0 **Location** 1.0

Response from the owner
a year ago

After reading your review, we're disappointed to learn that we fell short of your expectations. We're constantly trying to improve in order to provide the best guest experience possible, so we appreciate your honesty.

In the meantime, we'll look into these issues and do our best to address them. Thanks again for your time, and we hope to see you again soon.

Nancy Y

#Team6

**Figure 4 – Google Reviews of the South Freeway Motel 6[65]**

[65] *See* https://www.google.com/travel/search?q=motel%206%204201%20South%20Freeway%20Fort%20Worth&g2lb=4899571%2C4899573%2C4965990%2C72471280%2C72560029%2C72573224%2C72647020%2C72686036%2C72803964%2C72882230%2C72958624%2C73059275%2C73064764&hl=en-US&gl=us&ssta=1&ts=CAEaRwopEicyJTB4ODY0ZTcxZDgyMmI2ZjA3YjoweDg5YTdkNjEzOGUzM2U1ZWQSGhIUCgcI6g8QBhgGEgcI6g8QBhgIGAIyAhAA&qs=CAEyFENnc0k3Y3ZQOGJqQzlkT0pBUkFCOAJCCQnt5

(highlights added for emphasis)

4.32 Traffickers, including Jane Doe (C.C.)'s primary trafficker, repeatedly choose to use the South Freeway Motel 6 for their sex trafficking activity. As such, Ashutosh and G6 Hospitality, LLC knew or should have known about the pervasive sex trafficking at the South Freeway Motel 6 based on obvious indicators of this activity.

4.33 Upon information and belief, there were multiple trafficking victims exploited at the South Freeway Motel 6 prior to ***and*** during Jane Doe (C.C.'s) trafficking who exhibited "red flags" of trafficking that were observed by hotel staff and management, including paying with cash or prepaid cards, having high volumes of men who not registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, and other signs consistent with the "red flags" identified in *supra* ¶¶¶¶ 4.2–4.5 (human trafficking "red flags" exhibited at the South Freeway Motel 6 during the Relevant Trafficking Period).

4.34 Trafficking has a significant effect on its victims, and, upon information and belief, there were obvious "red flags" of trafficking apparent from the appearance, demeanor, and restricted movements of these victims, as well as the nature of these victims' interactions with their traffickers and others, all of which provided notice that these victims were being subject to violence, coercion, control, and exploitation at the South Freeway Motel 6 during the Relevant Trafficking Period.

4.35 As the franchisee, Defendant Ashutosh knew or should have known about this widespread and ongoing trafficking at the South Freeway Motel 6, including the trafficking of Jane Doe (C.C.), through the direct observations of hotel staff, including management-level staff.

---

TOOE9aniUIJCe3lM44T1qeJ&ap=KigKEgnlQO5imldAQBEuDZddmFRYwBISCUrxVCsdWEBAES4NF2daVFjAugEHcmV2aWV3cw&ictx=111&ved=0CAAQ5JsGahcKEwjwqeHewpOUAxUAAAAAHQAAAAAQBA.

4.36 Upon information and belief, Defendant G6 Hospitality, LLC (the franchisor) knew or should have known about the widespread trafficking at the South Freeway Motel 6, based on:

a. The obligation of Ashutosh hotel staff and hotel management to report suspected criminal activity, including sex trafficking, to G6 Hospitality, LLC;

b. G6 Hospitality, LLC's regular monitoring of online reviews regarding Motel 6 prperties, including the South Freeway Motel 6;

c. G6 Hospitality, LLC's collection and monitoring of customer surveys and complaints;

d. G6 Hospitality, LLC's regular inspections of the South Freeway Super 6;

e. Information provided to G6 Hospitality, LLC by law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline; and

f. Other sources of information available to G6 Hospitality, LLC.

4.37 Despite the mounting evidence that sex trafficking at its properties was ongoing and growing, G6 Hospitality, LLC continued to earn revenue by continuing conduct that they knew or should have known would continue to facilitate that trafficking. More specifically, during the Relevant Trafficking Period, G6 Hospitality, LLC received royalties from Ashutosh's rentals of rooms to traffickers, including C.C.'s primary trafficker, and had substantial oversight over Ashutosh's day-to-day operations. Such oversight included: (1) publicly assuming responsibility over Ashutosh's human trafficking response by implementing anti-trafficking policies, practices, training, and education for Ashutosh and its employees; (2) controlling guest internet use and data; (3) supervising and implementing policies for housekeeping services; and (4) retaining day-to-day control over renting rooms, such as check-in procedures, centralized reservation systems, room rates, rewards programs, cancellation policies, and a property management system.

4.38 Accordingly, during the Relevant Trafficking Period, G6 Hospitality, LLC participated in: (1) an ongoing business relationship renting rooms to traffickers, including C.C.'s

primary trafficker; (2) ventures, common undertaking, or enterprise with traffickers, including C.C.'s primary trafficker, involving risk and potential profit; (3) culpable assistance to C.C.'s primary trafficker, a wrongdoer, through a continuous business relationship that would lead to an inference of a tacit agreement; and (4) a desire to promote the success of traffickers like C.C.'s primary trafficker. G6 Hospitality, LLC also knowingly received a financial benefit from their ongoing business relationship and business venture with traffickers, including C.C.'s primary trafficker.

4.39 Upon information and belief, under G6 Hospitality, LLC's protocols, which on their face required Ashutosh hotel staff and management to report suspected criminal activity to G6 Hospitality, LLC, Ashutosh hotel staff and management were required to report numerous instances of suspected sex trafficking to G6 Hospitality, LLC prior to and during Jane Doe (C.C.)'s trafficking based on the numerous "red flags" exhibited by the victims who were exploited at the South Freeway Motel 6. *See supra* ¶¶¶¶ 4.2–4.5.

4.40 As discussed in *supra* ¶¶¶¶ 4.2–4.5, during the Relevant Trafficking Period, there were obvious signs that Jane Doe (C.C.)'s primary trafficker was engaged in sex trafficking at the South Freeway Motel 6. Based upon information and belief, multiple Ashutosh employees at the South Freeway Motel 6, including management–level employees, observed, or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment. As such, Ashutosh knew or was willfully blind to the fact that Jane Doe (C.C.) was being trafficked at the South Freeway Motel 6 during the Relevant Trafficking Period.

4.41 Given these obvious signs of trafficking, G6 Hospitality, LLC knew or should have known about the trafficking of Jane Doe (C.C.) based on its policy or protocol that required hotel staff of G6 franchisees like Asutosh to report suspected criminal activity, including sex

trafficking. Because of this reporting policy, upon information and belief, multiple Ashutosh employees at the South Freeway Motel 6, including management–level employees, reported the obvious signs of trafficking to G6 Hospitality, LLC that occurred during the Relevant Trafficking Period. Moreover, given the obvious signs of trafficking that occurred at the South Freeway Motel 6 during the Relevant Trafficking Period, G6 Hospitality, LLC knew or should have known about the trafficking of Jane Doe (C.C.) based on its monitoring of the South Freeway Motel 6.

**4. Sex Trafficking Has Also Long Been Prevalent at Super 8 by Wyndham Branded Properties, the Super 8-Afflifated Defendants Knew or Should Have Known About It.**

4.42 Like the Motel 6-affiliated Defendants, the Super 8–affiliated Defendants (Harayatana, Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.), knew or should have known, well before the Relevant Trafficking Period, that sex trafficking was ongoing and widespread at Super 8 by Wyndham branded properties – including the South Freeway Super 8.

4.43 Upon information and belief, at all relevant times, Wyndham has adopted a centralized approach to trafficking–related issues at all its branded properties. Wyndham's public statements confirm that it knew sex trafficking was a problem at its branded hotels and it retained control over the response of its branded hotels to sex trafficking. In fact, Wyndham has recognized it has a "critical role in increasing awareness and prevention" of sex trafficking in its branded hotels.[66] Since at least 2011, Wyndham has publicly claimed to be taking steps to avoid facilitating sex trafficking in its branded hotels.[67]

4.44 Unfortunately, while Wyndham's statements reflect actual knowledge of the problem of sex trafficking, they reflect only a public relations strategy rather than a genuine

[66] *See* Nathan Greenhalgh, *Wyndham implements anti-prostitution training,* HOTELS MAGAZINE (Aug. 1, 2011), https://hotelsmag.com/news/wyndham-implements-anti-prostitution-training/.
[67] *Id.*

commitment to stop facilitating trafficking. Emails among company executives show a hesitance to commit to meaningful anti-trafficking measures and a desire to avoid negative publicity without any significant burden.[68]

4.45 The problem of sex trafficking at Wyndham properties was sufficiently well known that, in 2011, there was a public petition with thousands of signatures to stop Wyndham hotel staff from supporting child sex trafficking.[69] Although Wyndham publicly committed to take steps to stop facilitating trafficking, this promise proved empty. Wyndham has been named a "major contributor to sexual exploitation" and part of the "dirty dozen list" by the National Center on Sexual Exploitation.[70] Additionally, since 2003, "Wyndham-branded properties have been mentioned in at least two hundred criminal trafficking cases filed by the federal government, according to data from the Human Trafficking Institute."[71]

4.46 Well before the Relevant Trafficking Period, sex trafficking was prominent at Wyndham branded properties, including Super 8 by Wyndham properties. Super 8 hotels are one of the five chains most frequently identified as a site of sex trafficking in federal criminal complaints.[72] Public information, including scores of news stories and online reviews, also

---

[68]*See* Bernice Yeng, *Should Hotel Chains Be Held Liable for Human Trafficking? THE* NEW YORKER (July 26, 2023) ("Scott McLester, Wyndham's former general counsel and chief compliance officer, wrote in an e-mail to the company's then C.E.O., Stephen Holmes, 'Even though we have been hesitant to commit to everything the [EPCAT] Code was asking for, the issue is not going away and it's starting to impact commercial relationships.' McLester added that the organization's 'concern about being 'bullied' into signing the Code is outweighed by the relative harmlessness of the Code itself.'"), https://www.newyorker.com/news/a-reporter-at-large/should-hotel-chains-be-held-liable-for-human-trafficking.

[69]*See* https://www.change.org/p/stop-wyndham-hotel-staff-from-supporting-child-sex-trafficking-in-wyndham-hotels.

[70]*See* https://endsexualexploitation.org/wyndham/.

[71]*See* Bernice Yeng, *Should Hotel Chains Be Held Liable for Human Trafficking*? THE NEW YORKER (July 26, 2023), https://www.newyorker.com/news/a-reporter-at-large/should-hotel-chains-be-held-liable-for-human-trafficking.

[72]Sarah Meo and Louise Shelley, *Sex Trafficking and Hotels: Why there is a Need for Effective Corporate Social Responsibility* (Nov. 11, 2021), https://www.globalpolicyjournal.com/blog/11/11/2021/sex-trafficking-and-hotels-why-there-need-effective-corporate-social-responsibility ("There is a high correlation between the hotels named in federal criminal cases and in the hotel chains named as defendants in civil lawsuits. The most common hotels in active criminal court cases in 2020 were Motel 6, Super 8, Days Inn, Red Roof Inn, and La Quinta.").

confirm both the widespread sex trafficking problem at Super 8 by Wyndham branded hotels and certainly establishes that the Super 8-affiliated Defendants (Harayatana, Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.) knew, or should have known, of the use of Super 8 hotels for sex trafficking. Examples of notable press involving the frequent use of Super 8 by Wyndham branded hotels for illegal activity, including sex trafficking, at Super 8 locations across the United States include:

- In 2010, a man was sentenced for sex trafficking a 16-year-old victim after being spotted by law enforcement with the minor at a Super 8 in Sacramento, California.[73]
- In January 2011, a man was sentenced to life for child sex trafficking for requiring a minor to perform commercial sex services more than 50 times over a 14-day period at a Jacksonville, Florida Super 8.[74]
- In November 2011, a man was sentenced for sex trafficking after he forced minor girls to engage in commercial sex for his financial benefit at a Super 8 in Prince William County, Virginia.[75]
- In June 2011, an MS-13 gang member was indicted for trafficking girls at a Super 8 near Washington, D.C.[76]
- In August 2012, four men were indicted after forcing a 24-year-old woman to engage in commercial sex at Columbia, Ohio hotels, including a Super 8.[77]
- In December 2012, a man was arrested for attempting to entice a 15-year-old girl to engage in prostitution at a Super 8 in Tulsa, Oklahoma.[78]
- In April 2013, two women were arrested for trafficking a juvenile girl at a

[73] *See* Kevin Poulsen, *Y2K Pimp Gets 12 Years for Recruiting Minor on My Space,* WIRED (Nov. 8, 2010),

[74] *See* Press Release, U.S. Attorney's Office-Middle District of Florida, Tallahassee Man Sentenced to Life for Child Sex Trafficking (Jan. 10, 2011), https://www.fbi.gov/jacksonville/press-releases/2011/ja011011.htm.

[75] *See* Amanda Stewart, *Gang member sentenced for sex trafficking in Prince William*, NEWS & MESSENGER (Manassas, Virginia) (Nov, 4, 2011), *available at* https://plus.lexis.com/api/permalink/562d85d9-e662-4e4f-8f7f-67b52fa537e8/?context=1530671.

[76] *See* Laura J. Lederer, *Sold for Sex: The Link Between Street Gangs and Human Trafficking*, PUBLIC DISCOURSE: JOURNAL OF THE WITHERSPOON INSTITUTE (Oct. 21, 2011), https://www.thepublicdiscourse.com/2011/10/4034/.

[77] *See* 10 WBNS, *Four Indicted in First Human Trafficking Case in Franklin County* (Aug. 2, 2021, 12:16 PM), https://www.10tv.com/article/news/crime/crime-tracker/four-indicted-first-human-trafficking-case-franklin-county/530-36f713e6-5488-4465-90c0-7eb99504a635.

[78] *See* David Harper, *Man faces new sex-trafficking charges,* TULSA WORLD (March 8, 2013), *available at* https://plus.lexis.com/api/permalink/a9062a1a-76b4-4811-89ab-5b0b3c877a88/?context=1530671.

River Grove, Illinois Super 8. [79]

- In October 2015, a man was sentenced to 21 years in prison for sex trafficking his 16-year-old girlfriend at a Super 8 in 2013.[80]

- According to a lawsuit filed in the United States District Court–District of New Jersey, the plaintiff was sex trafficked at a Super 8 by Wyndham hotel in San Bernardino California between 2010—2014.[81]

- According to a lawsuit filed in the United States District Court–Southern District of California, a plaintiff was sex trafficked at a Super 8 in Escondido, California in 2014.[82]

- According to a lawsuit filed in North Carolina, a plaintiff was "trafficked, beaten and raped up to 20 times every day for about two months" in 2014 at a Charlotte Super 8.[83]

- In 2023, at least a dozen human trafficking victims were rescued in a South Nasvhille Super 8 by the Nashville Police Department and the Tennessee Bureau of Investigation.[84]

4.47 Sex trafficking at Super 8 branded hotels also continues to occur after the Relevant Trafficking Period. For example, in August 2025, the U.S. Justice Department announced that 5 people were charged with a range of federal violations related to sex trafficking at several hotels in the Ohama, Nebraska metropolitan area – including a Super 8 by Wyndham hotel.[85] Ultimately, several hundreds of traffickers involved with hundreds of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of Super 8 by

---

[79] *See 2 women accused of human trafficking at motel* (Apr. 14, 2013), https://www.channel3000.com/news/local-news/2-women-accused-of-human-trafficking-at-motel/article_98edf1d4-d231-5ea1-a6b9-e71c83f44750.html.

[80] *See* U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *Dallas gang member sentenced to 21 years in federal prison on child sex trafficking conviction* (Oct. 21, 2015), https://www.ice.gov/news/releases/dallas-gang-member-sentenced-21-years-federal-prison-child-sex-trafficking-conviction.

[81] *See* Opinion, *Jane Doe (M.J.J.) v. Wyndham Hotels & Resorts Inc. et al.,* No. 24-6490 at *1 (D.N.J.) (Jan 30, 2025), https://law.justia.com/cases/federal/district-courts/new-jersey/njdce/2:2024cv06490/549119/38/.

[82] *See* Compl. at ¶ 48, Jane Doe (C.M.S.) v. *Wyndham Hotels & Resorts Inc. et al.,* No. 24-cv-0217 (S.D.C.A.) (Jan 31, 2024), https://www.aboutlawsuits.com/wp-content/uploads/2024-1-31-hotel-trafficking-cms-complaint.pdf.

[83] https://www.wcnc.com/article/news/local/charlotte-super-8-accused-of-allowing-child-sex-trafficking-federal-lawsuit/275-f087661b-29b2-40e0-b1e7-554b0814a7cb.

[84] https://fox17.com/news/local/human-trafficking-victims-rescued-in-nashville.

[85] https://www.justice.gov/usao-ne/pr/federal-operation-targets-nebraska-human-trafficking-ring-area-hotels.

Wyndham branded properties.

4.48 Based upon information and belief, the Wyndham Franchisor Defendants (Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.) manage and monitor online reviews of Super 8 hotel locations. For example:

- An August 2008 Trip Advisor review of a Super 8 property in Tucson, Arizona stated: "Woke in middle of night (2:30am) with loud party on 2nd floor with bodies slamming into walls, and looked out window to see hooker and pimp making deal with another man in pickup in the parking lot."[86]

- A January 2010 Trip Advisor review of a Super 8 property in Escondido, California stated: "This is a hooker hangout, doors slaming at 3:00 AM, You will hear pimps on their cellphones outside in the middle of the night. Ladies arriving at 4:00 AM, Management MUST be aware this is going on and condone this. I expected John Walsh to show up with a film crew."[87]

- A February 2010 Trip Advisor review of a Super 8 property in Los Angeles, California stated: "This place lacks security and there were drug dealers trying to push their products inside of the hotel. This place is Scary. The neighborhood was frightening and there were also prostitutes and homeless/addicts all over the place and renting rooms in the hotel. The desk guy looked at my friends attire (faux fur coat) and assumed he was a pimp and that we were prostitutes and seemed surprised that we had made reservations for more than one night. He kept giving us this strange smile... icky. This place left me with a bad feeling. If you want to stay here to save a few bucks my advice is to utilize the buddy system whenever you leave your room to visit the vending machines... after checking in for the night that is probably the only thing you will feel even moderately safe doing. eek. I can deal with scary hotels but this place is a disaster waiting to happen." [88]

- A June 2010 Expedia review of a Super 8 property in Virginia stated: "The location is in a very unsafe place. There were junkies and prostitutes using the premises of the hotel.[89]

- A July 2010 Trip Advisor review of a Super 8 property in Austin, Texas stated:

---

[86]https://www.tripadvisor.co/Hotel_Review-g60950-d74409-Reviews-Super_8_by_Wyndham_Tucson_Downtown_Convention_Center-Tucson_Arizona.html.
[87]https://www.tripadvisor.com/Hotel_Review-g32358-d235407-i132418454-Super_8_Escondido-Escondido_California.html.
[88]https://www.tripadvisor.com/Hotel_Review-g32655-d235134-Reviews-Super_8_by_Wyndham_Hollywood_La_Area-Los_Angeles_California.html.
[89]https://www.expedia.com/Norfolk-Hotels-Super-8-By-Wyndham-NorfolkChesapeake-Bay.h7202.Hotel-Information.

"After a night out parking lot full had to park under drive thur in front of hotel no other space. Number One reason to not stay here HOOKERS!!! walking the parking lot, walking the sidewalks and feeder road roads in front of Motel. All hours of the day."[90]

- An October 2011 Trip Advisor review of a Super 8 property in Tennessee stated: "Don't stay here unless you want drugs or a prostitute.   or both. There were drunks running up the halls all night and the maid offered to have sex with my husband for money. When he refused, she then offered to sell him pills."[91]

- A February 2012 Trip Advisor review of a Super 8 property in Florida stated: "This hotel should not even be listed as a choice to stay in. Upon check, 3 rooms from me was a sexual battery crime scene. Prostitutes and drug deals were going on all over the property. The room was filthy, smelled horrible and I wouldn't even touch the bed! This hotel is a LIVE IN hotel for Prostitutes, drug dealers and gangs!!!!! DO NOT STAY HERE!!"[92]

- An April 2012 Expedia review of a Super 8 property in Virginia stated: "Just beware, there are "escorts" who are constantly on the lookout for fresh meet. A pimp will knock on your door asking to use your cell to call his girlfriend. From then on, she will do the work."[93]

- An April 2012 Trip Advisor review of a Super 8 property in Houston, Texas stated: "We have stayed in hotels all over the world and I have never had as terrible and frightening an experience as I had at this hotel. The place was crawling with prostitutes and seedy looking guys looking for prostitutes. We tried to stay here anyway, but the night manager started threatening us! In the end we had to call the police in order to safely leave. The police were very sympathetic, and apparently they have frequent problems with this hotel. Stay Away."[94]

- An October 2012 Trip Advisor review of a Super 8 property in Florida stated: "the last time i stayed at this super 8, a hooker approached me in the parking lot and i informed you. this time there was a drug dealer in the next door room, cars coming and going all day & night a car would pull up and one person goes inside and 5 minutes later comes out. when i was checking out i told the desk clerk

[90] https://www.tripadvisor.com/Hotel_Review-g30196-d109015-Reviews-Super_8_by_Wyndham_Austin_North_University_Area-Austin_Texas.html.
[91] https://www.tripadvisor.com/Hotel_Review-g55138-d97967-Reviews-or165-Super_8_by_Wyndham_Knoxville_Downtown_Area-Knoxville_Tennessee.html.
[92] https://www.tripadvisor.com/Hotel_Review-g34378-d113362-Reviews-Super_8_by_Wyndham_Lantana_West_Palm_Beach-Lantana_Florida.html.
[93] https://www.expedia.com/Manassas-Hotels-Super-8-By-Wyndham-Manassas.h12141.Hotel-Information.
[94] https://www.tripadvisor.ca/Hotel_Review-g56003-d240483-Reviews-Super_8_by_Wyndham_Houston_Brookhollow_NW-Houston_Texas.html.

and the girl in the office says oh i know who that is. well if you knew about why was he still there. i will never stay there again, and i'm a loyal super 8 customer."[95]

- A March 2013 Trip Advisor review of a Super 8 property in Louisiana stated: "There was a PROSTITUTE running her business from a room, with her pimp standing outside. She propositioned a co-worker as he was going to his room. Then in the middle of the night she and her clients were fighting very loudly over money and services issued!"[96]

- A March 2013 Trip Advisor review of a Super 8 property in Ohio stated: "I've been solicited for drugs and by prostitutes here on several occassions. I told the hotel staff about it and they seem to turn a blind eye to the problem because these people are also buying rooms."[97]

- A February 2013 Trip Advisor review of a Super 8 property in Minnesota stated: "This hotel was disgusting. Homeless man passed out in lobby, possible prostitute hanging out in hallway with pimp, cigarette smell, ridiculous noise level throughout night, etc. Dirty shoes in microwave, empty beer cans in fridge. I cannot express enough how terrible this place really is."[98]

- An April 2013 Trip Advisor review of a Super 8 property in Georgia stated: "The hotel was filled with prostitutes and drug dealers and I was put in the back with my children which gave me no type of security. Super 8 needs to remove their name from this building."[99]

- A July 2013 Trip Advisor review of a Super 8 property in California stated: "Our first night we were greeted by undercover police busting the prostitutes using the spare rooms to turn tricks. Maids make extra income unlocking vacant rooms. I would not recommend this place for children. Or anyone for that fact."[100]

- An August 2013 Trip Advisor review of a Super 8 property in Ohio stated: "This

[95]https://www.tripadvisor.com/Hotel_Review-g34378-d113362-Reviews-Super_8_by_Wyndham_Lantana_West_Palm_Beach-Lantana_Florida.html.
[96]https://www.tripadvisor.ca/Hotel_Review-g40314-d120851-Reviews-FairBridge_Inn_Express_Metairie-Metairie_Louisiana.html.
[97]https://www.tripadvisor.com/Hotel_Review-g50891-d226034-Reviews-Quality_Inn_Columbus_East- Reynoldsburg_Ohio.html.
[98]https://www.tripadvisor.com/Hotel_Review-g43493-d247863-Reviews-Super_8_by_Wyndham_St_Cloud-Saint_Cloud_Minnesota.html.
[99]https://www.tripadvisor.com/Hotel_Review-g34856-d217054-Reviews-Super_8_by_Wyndham_Atlanta_Hartsfield_Jackson_Airport-College_Park_Georgia.html.
[100]https://www.tripadvisor.com/Hotel_Review-g32655-d252254-Reviews-or50-Super_8_by_Wyndham_Canoga_Park-Los_Angeles_California.html.

hotel gives the Super 8 chain a bad reputation. The local restaurant management told us not to answer door due to prostitution issues."[101]

- An October 2013 Trip Advisor review of a Super 8 property in Virginia stated: "Clean but in bad shape. Some one had tried to break in, I guess, and kicked the door in. The top security latch had been ripped off leaving only the door latch to keep someone out. We ended up wedging a pole in the door for safety reasons. After dark the place turned into, I do NOT exaggerate, a open hoer house. At lease 4 pimps were doing business with a dozen or so girls there. If not for the safety reasons it was a life experience seeing that side of society. We were surprised at a chain like Super 8 condoning this activity. Because the door, I guess, had been kicked in there was a gap in the door and the rain had come in and the carpet was SOAKED. I mean like when you would walk on it water would come up around your soles. When I reported this the manager he said this happens when it rains. I asked, if he knew this, why he did not fix it. Just a blank look. The ceiling had caved in at one point, we were on the top floor, and a sloppy patch had been applied and black mold had started to set in. The big thing was the blatant open prostitution that was condoned by your chain was despicable. The car music blaring and loud laughing and yelling was just like out of a rap video. Shame on you Super 8 for condoning this kind of activity just to fill a room."[102]

4.49 This sampling of news stories, reviews, and other public information establishes that, at the time Jane Doe (C.C.) was trafficked at South Freeway Super 8, the Wyndham Franchisor Defendants (Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.) knew or should have known that:

a. There was widespread and ongoing sex trafficking occurring at Super 8 by Wyndham branded properties;

b. Sex trafficking was a brand-wide problem for Super 8 by Wyndham originating from management level decisions at their corporate offices in Parsippany, New Jersey;

c. Super 8 franchisees and hotel staff were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at their hotel properties and were facilitating sex trafficking at the branded hotel properties;

---

[101] https://www.tripadvisor.com/Hotel_Review-g50891-d226034-Reviews-Quality_Inn_Columbus_East-Reynoldsburg_Ohio.html.
[102] https://www.tripadvisor.com/Hotel_Review-g58026-d110776-Reviews-or10-Super_8_by_Wyndham_Norfolk_Chesapeake_Bay-Norfolk_Virginia.html#REVIEWS.

d. The Wyndham Franchisor Defendants efforts, if any, to stop facilitating sex trafficking in their branded properties were not effective;

e. The Wyndham Franchisor Defendants and its franchisees were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring.

4.50 Despite the mounting evidence that sex trafficking at its properties was ongoing and growing, the Wyndham Franchisor Defendants (Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.) continued to earn revenue by continuing conduct that they knew or should have known would continue to facilitate that trafficking. Furthermore, having been on notice of the prevalence of sex trafficking generally at its hotels, the Wyndham Franchisor Defendants failed to take adequate steps to train staff and management of franchisees like Harayatana to prevent such trafficking.

4.51 The Wyndham Franchisor Defendants and Harayatana were also specifically aware that trafficking and other illegal activity was ongoing <u>at the South Freeway Super 8</u> prior to, during, and after the Relevant Trafficking Period. Internet reviews for the South Freeway Super 8, which upon information and belief Harayatana and the Wyndham Franchisor Defendants manage and monitor, shows the pervasiveness of the illegal activity. *See, e.g.,* Figure 5 below.


jon russell
10 years ago on Google
1/5

DO NOT STAY HERE!!! Filthy rooms. Stains and hair from somebody's weave/wig on the sheets. Nothing worked. Unsafe. Drugs, criminals and lots of unsavory characters. Very dangerous. This hotel is not what it used to be just a couple of years ago. I got my money back and didn't stay. Am ashamed of management for letting a family even check in. AWFUL, AWFUL PLACE>




**Figure 5 – Google Reviews of the South Freeway Motel 8**[103]
(highlights added for emphasis)

4.52 Traffickers, including Jane Doe (C.C.)'s primary trafficker, repeatedly choose to use the South Freeway Super 8 for their sex trafficking activity. As such, the Super 8–affiliated Defendants (Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, Wyndham Hotels & Resorts, Inc., and Harayatana) knew or should have known about the pervasive sex trafficking at the South Freeway Super 8 based on obvious indicators of this activity.

4.53 Upon information and belief, there were multiple trafficking victims exploited at the South Freeway Super 8 prior to ***and*** during Jane Doe (C.C.'s) trafficking who exhibited "red flags" that were observed by hotel staff and management, including paying with cash or prepaid cards, having high volumes of men who not registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, and other signs consistent with the "red

---

[103] *See* https://www.google.com/travel/search?q=super%208%20by%20wyndham%206500%20south%20freeway%20fort%20worth&g2lb=4965990%2C72471280%2C72560029%2C72573224%2C72647020%2C72686036%2C72803964%2C72882230%2C73059275%2C73064764%2C121608705%2C121641898&hl=enUS&gl=us&ssta=1&ts=CAEaRwopEicyJTB4ODY0ZTZlNWIyYzRmMDE4NToweDNmYWU1MGI4NmIyMTA4OTUSGhIUCgcI6g8QCBgJEgcI6g8QCBgKGAEyAhAA&qs=CAEyE0Nnb0lsWkdFMllhWGxOY19FQUU4AkIJCZUIIWu4UK4_QgkJlQgha7hQrj8&ap=ugEHcmV2aWV3cw&ictx=111&ved=0CAAQ5JsGahcKEwiwnrOCkaqUAxUAAAAAHQAAAAAQBA.

flags" of trafficking identified in *supra* ¶¶¶¶ 4.2–4.5 (human trafficking "red flags" exhibited at the South Freeway Super 8 during the Relevant Trafficking Period).

4.54 Trafficking has a significant effect on its victims, and, upon information and belief, there were obvious "red flags" of trafficking apparent from the appearance, demeanor, and restricted movements of these victims, as well as the nature of these victims' interactions with their traffickers and others, all of which provided notice that these victims were being subject to violence, coercion, control, and exploitation at the South Freeway Super 8 during the Relevant Trafficking Period.

4.55 As the franchisee, Defendant Harayatana knew or should have known about this widespread and ongoing trafficking at the South Freeway Super 8, including the trafficking of Jane Doe (C.C.), through the direct observations of hotel staff, including management-level staff.

4.56 Upon information and belief, the Wyndham Franchisor Defendants (Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.) knew or should have known about the widespread trafficking at the South Freeway Super 8, based on:

a. The obligation of Harayatana hotel staff and hotel management to report suspected criminal activity, including sex trafficking, to the Wyndham Franchisor Defendants;

b. The Wyndham Franchisor Defendants regular monitoring of online reviews regarding Super 8 properties, including the South Freeway Super 8;

c. The Wyndham Franchisor Defendants' collection and monitoring of customer surveys and complaints;

d. The Wyndham Franchisor Defendants' regular inspections of the South Freeway Super 8;

e. Information provided to the Wyndham Franchisor Defendants by law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline; and

f. Other sources of information available to the Wyndham Franchisor

Defendants.

4.57 Despite the mounting evidence that sex trafficking at its properties was ongoing and growing, the Wyndham Franchisor Defendants (Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.) continued to earn revenue by continuing conduct that they knew or should have known would continue to facilitate that trafficking. More specifically, during the Relevant Trafficking Period, the Wyndham Franchisor Defendants received royalties from Harayatana's rentals of rooms to traffickers, including C.C.'s primary trafficker, and had substantial oversight over Harayatana's day-to-day operations. Such oversight included: (1) publicly assuming responsibility over Harayatana's human trafficking response by implementing anti-trafficking policies, practices, training, and education for Harayatana and its employees; (2) controlling guest internet use and data; (3) supervising and implementing policies for housekeeping services; and (4) retaining day-to-day control over renting rooms, such as check-in procedures, centralized reservation systems, room rates, rewards programs, cancellation policies, and a property management system.

4.58 Accordingly, during the Relevant Trafficking Period, the Wyndham Franchisor Defendants participated in: (1) an ongoing business relationship renting rooms to traffickers, including C.C.'s primary trafficker; (2) ventures, common undertaking, or enterprise with traffickers, including C.C.'s primary trafficker, involving risk and potential profit; (3) culpable assistance to C.C.'s primary trafficker, a wrongdoer, through a continuous business relationship that would lead to an inference of a tacit agreement; and (4) a desire to promote the success of traffickers like C.C.'s primary trafficker. The Wyndham Franchisor Defendants also knowingly received a financial benefit from their ongoing business relationship and business venture with traffickers, including C.C.'s primary trafficker.

4.59 Upon information and belief, under the Wyndham Franchisor Defendants' (Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.) protocols, which on their face required Harayatana hotel staff and management to report suspected criminal activity to the Wyndham Franchisor Defendants, Harayatana hotel staff and management were required to report numerous instances of suspected sex trafficking to the Wyndham Franchisor Defendants prior to and during Jane Doe (C.C.)'s trafficking based on the numerous "red flags" exhibited by the victims who were exploited at the South Freeway Super 8. *See supra* ¶¶¶¶ 4.2–4.5 (human trafficking "red flags" exhibited at the South Freeway Super 8 during the Relevant Trafficking Period).

4.60 As discussed in *supra* ¶¶¶¶ 4.2–4.5, during the Relevant Trafficking Period, there were obvious signs that Jane Doe (C.C.)'s primary trafficker was engaged in sex trafficking at the South Freeway Super 8. Based upon information and belief, multiple Harayatana employees at the South Freeway Super 8, including management–level employees, observed, or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment. As such, Harayatana knew or was willfully blind to the fact that Jane Doe (C.C.) was being trafficked at the South Freeway Super 8.

4.61 Given these obvious signs of trafficking, the Wyndham Franchisor Defendants knew or should have known about the trafficking of Jane Doe (C.C.) based on its policy or protocol that required hotel staff of Super 8 franchisees like Harayatana to report suspected criminal activity, including sex trafficking. Because of this reporting policy, upon information and belief, multiple Harayatana employees at the South Freeway Super 8, including management–level employees, reported the obvious signs of trafficking to the Wyndham Franchisor Defendants that occurred during the Relevant Trafficking Period. Moreover, given the obvious signs of trafficking

that occurred at the South Freeway Super 8 during the Relevant Trafficking Period, the Wyndham Franchisor Defendants knew or should have known about the trafficking of Jane Doe (C.C.) based on their monitoring of the South Freeway Super 8.

### 5. Defendants Sneha Corporation and Fort Worth Hospitality Had Actual Knowledge of Sex Trafficking at the South Freeway Delux Inn and Super 7 and Actively Participated in Commercial Sex Acts with Jane Doe (C.C.).

4.62 As seen in *supra* ¶¶¶¶ 4.2–4.5, during the Relevant Trafficking Period, there were obvious signs that Jane Doe (C.C.)'s primary trafficker was engaged in sex trafficking at the South Freeway Delux Inn and Super 7. Based upon information and belief, multiple Sneha Corporation and Fort Worth Hospitality employees at the South Freeway Delux Inn and Super 7, including management-level employees, observed, or were made aware of, these obvious signs of trafficking, while acting within the scope and course of their employment. Additionally, as discussed in *supra* ¶¶¶ 4.6–4.8, during the Relevant Trafficking Period, staff and management at Sneha Corporation and Fort Worth Hospitality engaged in commercial sex acts with C.C. and other trafficked women. More specifically, they received free sex acts from trafficked women like C.C. as a reward for allowing C.C's primary trafficker and his criminal associates to continue openly operating their drug and sex trafficking enterprise at the South Freeway Delux Inn and Super 7. Thus, as the owners and operators of the South Freeway Delux Inn and Super 7, Defendants Sneha Corporation and Fort Worth Hospitality had actual knowledge of the widespread and ongoing human trafficking at their hotels – including C.C.'s trafficking.

4.63 As seen in *supra* ¶¶¶ 4.6–4.8, during the Relevant Trafficking Period, Defendants Sneha Corporation and Fort Worth Hospitality participated in: (1) an ongoing business relationship renting rooms to traffickers, including C.C.'s primary trafficker; (2) ventures, common undertaking, or enterprise with traffickers, including C.C.'s primary trafficker, involving

risk and potential profit; (3) culpable assistance to C.C.'s primary trafficker, a wrongdoer, through a continuous business relationship that would lead to an inference of a tacit agreement; and (4) a desire to promote the success of traffickers like C.C.'s primary trafficker. Sneha Corporation and Fort Worth Hospitality also knowingly received a financial benefit (*e.g.*, free sex acts) from their ongoing business relationship and business venture with C.C.'s primary trafficker and other traffickers during the Relevant Trafficking Period.[104]

**6. During the Relevant Trafficking Period, the Subject Hotels had actual or constructive knowledge of Jane Done (CC's) Trafficking – an unreasonably dangerous condition.**

4.64 During the Relevant Trafficking Period, C.C. was an invitee at the Subject Hotels because either her primary trafficker, one of his criminal associates, or C.C. herself, rented the hotel rooms. *See Motel 6 G.P., Inc. v. Lopez,* 929 S.W.2d 1, 3 (Tex. 1996) ("as a guest of the motel, [plaintiff] qualifies as an invitee for purposes of a premise liability claim.").

4.65 For the reasons discussed in *supra* ¶¶¶¶ 4.2–4.5, Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh, as the owners and operators of the Subject Hotels, should reasonably have anticipated that human trafficking was occurring at their hotels during the Relevant Trafficking Period. Moreover, online reviews—which upon information and belief are regularly monitored by Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh—show that criminal activity was occurring at the Subject Hotels before the Relevant Trafficking Period. *See, e.g.,* Google Reviews, Motel 6 Fort Worth, TX – Seminary (8 years ago, motel guest Guss Hernandez wrote that the South Freeway Motel 6 was "the worst place" as there were "people selling drugs[,] terrible smell of marijuana[,]

[104] This conduct constitutes a "financial benefit" because Sneha Corporation and Fort Worth Hospitality hotel staff and management received a thing of value—commercial sex acts involving C.C. and other trafficked women—that would normally require payment to C.C.'s traffickers.

prostitution….")[105]; Google Reviews, Super 8 by Wyndham Fort Worth South (10 years ago, hotel guest jon Russell wrote that the South Freeway Super 8 was "unsafe" and "Very dangerous" due to "Drugs, criminals and lots of unsavory characters.").[106]

4.66 Additionally, as discussed in *supra* ¶¶¶ 4.6–4.8, during the Relevant Trafficking Period, staff and management at Sneha Corporation and Fort Worth Hospitality engaged in commercial sex acts with C.C. and other trafficked women in exchange for allowing C.C.'s primary trafficker and his criminal associates to continue openly operating their drug and sex trafficking enterprise at the South Freeway Delux Inn and Super 7.[107] Accordingly, as the owners and operators of the South Freeway Delux Inn and Super 7, Defendants Sneha Corporation and Fort Worth Hospitality had actual knowledge of the criminal activity and immediate assaultive conduct occurring at their hotels because they actively participated in that criminal activity. *See* Tex. Penal Code § 22.01(a)(3) (defining assault as "intentionally or knowingly caus[ing] physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.").

4.67 Significantly, during the Relevant Trafficking Period, Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh, as the owners and operators of

---

[105] *See* https://www.google.com/travel/search?q=motel%206%204201%20South%20Freeway%20Fort%20Worth&g2lb=4899571%2C4899573%2C4965990%2C72471280%2C72560029%2C72573224%2C72647020%2C72686036%2C72803964%2C72882230%2C72958624%2C73059275%2C73064764&hl=en-US&gl=us&ssta=1&ts=CAEaRwopEicyJTB4ODY0ZTcxZDgyMmI2ZjA3YjoweDg5YTdkNjEzOGUzM2U1ZWQSGhIUCgcI6g8QBhgGEgcI6g8QBhgIGAIyAhAA&qs=CAEyFENnc0k3Y3ZQOGJqQzlkT0pBUkFCOAJCCQnt5TOOE9aniUIJCe3lM44T1qeJ&ap=ugEHcmV2aWV3cw&ictx=111&ved=0CAAQ5JsGahcKEwjg9sGcuLGUAxUAAAAAHQAAAAAQBA.

[106] *See* https://www.google.com.ng/travel/hotels/entity/ChcIlZGE2YaXlNc_GgsvZy8xdGQxZHRybRAB/reviews?utm_campaign=sharing&utm_medium=link&utm_source=htls&ts=CAEaIAoCGgASGhIUCgcI6g8QBRgNEgcI6g8QBRgOGAEyAhAAKgkKBToDVVNEGgA.

[107] This conduct constitutes a "commercial sex act" because Sneha Corporation and Fort Worth Hospitality hotel staff and management received a thing of value—commercial sex acts involving C.C. and other trafficked women—that would normally require payment to C.C.'s traffickers. *See* 18 U.S.C. § 1591(e)(3).

the Subject Hotels, failed to implement ***any*** adequate precautions against human trafficking. As a result of these failures, C.C.'s primary trafficker and his criminal associates were permitted to traffic, assault, and force C.C. to engage in commercial sex acts against her will at the Subject Hotels throughout the Relevant Trafficking Period. For instance, as reflected in the timeline set forth *supra* § 4.4, C.C. and other trafficked women stayed at each of the four (4) Subject Hotels at least once a month between May 2024 to September 2024, often for multiple consecutive days, before C.C. escaped her traffickers in or around late September to early October 2024.

4.68 This ongoing criminal conduct constitutes an unreasonably dangerous condition that Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh failed to adequately prevent or address. Specifically, these Defendants failed to protect Jane Doe (C.C.) from trafficking during the Relevant Trafficking Period by failing to warn her of the danger posed by the trafficking activity and by failing to make the Subject Hotels reasonably safe from such criminal conduct. For example, employees and management at the Subject Hotels could have reported the trafficking activity to law enforcement, reported the trafficking activity to a reputable anti-trafficking organizations like the National Human Trafficking Hotline, refused to continue renting rooms to C.C.'s primary trafficker, and/or provided C.C. with resources or information regarding how to escape human trafficking during the Relevant Trafficking Period. Despite numerous opportunities to identify and disrupt the trafficking activity occurring on their premises, these Defendants failed to take any of these reasonable measures to prevent or report it.

**7. *Respondeat Superior***

4.69 Defendants are vicariously liable for the injuries and damages proximately caused by the acts and omissions of their employees, staff, and management under the legal doctrine of *respondeat superior*. Upon information and belief, all employees, staff, and management

described in this Complaint were acting within the course and scope of their employment during the Relevant Trafficking Period. More specifically, throughout the Relevant Trafficking Period, all employees, staff, and management described in Section IV herein were (1) acting within the general authority granted to them by Defendants; (2) in furtherance of Defendants' business; and (3) for the accomplishment of the object for which they were hired. *See Knight v. City Streets, L.L.C.,* 167 S.W.3d 580, 583 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Throughout the Relevant Trafficking Period, Defendants also had the right to control the progress, details, and methods of the work of their employees, staff, and management.

## V.
## CAUSES OF ACTION

### 1. Beneficiary Liability Claim Under the Trafficking Victims Protection Reauthorization Act (TVPRA) Against All Defendants.

5.1 Plaintiff brings a beneficiary liability claim under the TVPRA, 18 U.S.C. § 1595(a), against Defendants Sneha Corporation D/B/A Delux Inn; Fort Worth Hospitality, Ltd. D/B/A Super 7 Inn; Harayatana, LLC D/B/A Super 8; Super 8 Worldwide, Inc.; Wyndham Hotels & Resorts, LLC; Wyndham Hotels & Resorts, Inc.; Ashutosh Corporation D/B/A Motel 6; and G6 Hospitality, LLC. The beneficiary liability section of the TVPRA states that:

> An individual who is a victim of a violation of this chapter may bring a *civil action* against the perpetrator (*or whoever knowingly benefits*, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew *or should have known* has engaged in an act in violation of this chapter)….

18 U.S.C. § 1595(a) (emphasis added). Jane Doe (C.C.) is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591. Force, threats, fraud, and coercion by C.C.'s primary trafficker and his criminal associates caused C.C. to engage in commercial sex acts from approximately May 2024 to September 2024 at the Subject Hotels. *See supra* pp. 9–15. Therefore, C.C. is entitled to bring this civil action under the TVPRA's beneficiary liability section, 18 U.S.C. § 1595(a).

5.2 Through the acts and omissions described throughout this Complaint, Defendants knowingly received a financial benefit from participating in a venture with traffickers, including C.C.'s primary trafficker, despite the fact that each Defendant knew or should have known that these traffickers, including C.C.'s primary trafficker, were engaged in violations of 18 U.S.C. § 1595(a). Specifically, Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh received money from renting rooms to traffickers, including C.C.'s primary trafficker, during the Relevant Trafficking Period. Additionally, the Wyndham Franchisor Defendants (Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.) received royalties from Harayatana's rentals of rooms to traffickers, including C.C.'s primary trafficker, during the Relevant Trafficking Period. Likewise, Defendant G6 Hospitality, LLC received royalties from Ashutosh's rentals of rooms to traffickers, including C.C.'s primary trafficker, during the Relevant Trafficking Period.

5.3 Through the acts and omissions described throughout this Complaint, Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh participated in a venture with traffickers, during the Relevant Trafficking Period by renting rooms to traffickers, including C.C.'s primary trafficker. Thus, these Defendants (1) participated in a continuous business relationship that assisted, supported, or facilitated the traffickers' success; and (2) showed a desire to promote the traffickers' success. Moreover, through the acts and omissions described throughout this Complaint, Defendants Sneha Corporation and Fort Worth Hospitality participated in a venture with traffickers, including C.C.'s primary trafficker, during the Relevant Trafficking Period by participating in commercial sex acts with trafficking victims like C.C.

5.4 Through the acts and omissions described throughout this Complaint, the Wyndham Franchisor Defendants (Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and

Wyndham Hotels & Resorts, Inc.) participated in a venture with traffickers, including C.C.'s primary trafficker, during the Relevant Trafficking Period by (1) controlling the day-to-day operations of their franchisee, Harayatana; (2) permitting Harayatana, their franchisee, to rent rooms to traffickers, including C.C.'s primary trafficker; and (3) receiving royalties from Harayatana's rental of rooms to traffickers, including C.C.'s primary trafficker. In turn, the Wyndham Franchisor Defendants participated in a continuous business relationship that assisted, supported, or facilitated the traffickers' success during the Relevant Trafficking Period; and (2) showed a desire to promote the traffickers' success during the Relevant Trafficking Period.

5.5 Likewise, through the acts and omissions described throughout this Complaint, G6 Hospitality, LLC participated in a venture with traffickers, including C.C.'s primary trafficker, during the Relevant Trafficking Period by (1) controlling the day-to-day operations of their franchisee, Ashutosh; (2) permitting Ashutosh, G6 Hospitality's franchisee, to rent rooms to traffickers, including C.C.'s primary trafficker; and (3) receiving royalties from Ashutosh's rental of rooms to traffickers, including C.C.'s primary trafficker. In turn, G6 Hospitality, LLC (1) participated in a continuous business relationship that assisted, supported, or facilitated the traffickers' success during the Relevant Trafficking Period; and (2) showed a desire to promote the traffickers' success during the Relevant Trafficking Period.

5.6 Through the acts and omissions described throughout this Complaint, Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh knew or should of known of Jane Doe (C.C.'s) trafficking during the Relevant Trafficking Period through the "red flags" that were obvious and readily apparent to the staff and management of the Subject Hotels. *See supra* ¶¶¶¶ 4.2–4.5. Moreover, through the acts and omissions described throughout this Complaint, Defendants Sneha Corporation and Fort Worth Hospitality had actual knowledge of C.C.'s

trafficking through staff and management's participation in commercial sex acts with C.C. and other trafficked women at the South Freeway Delux Inn and Super 7. *See supra* ¶¶¶ 4.6–4.8.

5.7 Through the acts and omissions described throughout this Complaint, the Wyndham Franchisor Defendants (Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.) knew or should have known of C.C.'s trafficking based on the numerous "red flags" that were obvious and readily apparent to the staff and management of the South Freeway Super 8. *See supra* ¶¶¶¶ 4.2–4.5. More specifically, because the Wyndham Franchisor Defendants maintained policies and protocols requiring franchisees like Harayatana to report suspected criminal activity, including sex trafficking, the Wyndham Franchisor Defendants knew or should have known of C.C.'s trafficking based on reports submitted by Harayatana's staff and management concerning such criminal activity.

5.8 Similarly, through the acts and omissions described throughout this Complaint, G6 Hospitality, LLC knew or should have known of C.C.'s trafficking based on the numerous "red flags" that were obvious and readily apparent to the staff and management of the South Freeway Motel 6. *See supra* ¶¶¶¶ 4.2–4.5. More specifically, because G6 Hospitality, LLC maintained policies and protocols requiring franchisees like Ashutosh to report suspected criminal activity, including sex trafficking, G6 Hospitality, LLC knew or should have known of C.C.'s trafficking based on reports submitted by Ashutosh's staff and management concerning such criminal activity.

5.9 Plaintiff's substantial physical injuries, unimaginable psychological harm, and resulting damages were proximately caused by being trafficked and sexually exploited at the Subject Hotels during the Relevant Trafficking Period. Accordingly, Defendants are jointly and severally liable for C.C.'s damages under the under the TVPRA. *See* 18 U.S.C. §1595(a).

**2. TVPRA Vicarious Liability Claim Against the Wyndham Franchisor Defendants and G6 Hospitality, LLC.**

5.10 Plaintiff brings a TVPRA vicarious liability claim against the Wyndham Franchisor Defendants (Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.). Under the TVPRA and federal common law, each member of a joint venture is vicariously liable for the acts and omissions of all other members of that joint venture. Through the acts and omissions described throughout this Complaint, the Wyndham Franchisor Defendants exercised systemic and pervasive control over Harayatana, the owner and operator of the South Freeway Super 8. Thus, throughout the Relevant Trafficking Period, Harayatana was acting as an agent of the Wyndham Franchisor Defendants.

5.11 For instance, the Wyndham Franchisor Defendants exercised control over Harayatana throughout the Relevant Trafficking Period by: (1) controlling online and in-person mandated training programs; (2) controlling guest reservation and check-in processes; (3) designating approved vendors; (4) requiring Harayatana to sign a technology agreement that controlled the brands and software; (5) mandating staffing levels; (6) establishing detailed job descriptions; (7) creating hiring requirements; (8) providing benefits for Harayatana employees; (9) controlling channels for consumer complaints; (10) managing guest information and analyzing data; (11) requiring certain insurance; (12) conducting random inspections; and (13) implementing operations reports. Additionally, based upon information and belief, the Wyndham Franchisor Defendants (Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.) implemented anti–trafficking policies, practices, training, and education for franchisees like Harayatana and their employees and created a hotline for hotel staff of franchisees like Harayatana to report trafficking.

5.12 Plaintiff also brings a TVPRA vicarious liability claim against the G6 Hospitality, LLC. Under the TVPRA and federal common law, each member of a joint venture is vicariously liable for the acts and omissions of all other members of that joint venture. Through the acts and omissions described throughout this Complaint, G6 Hospitality, LLC exercised systemic and pervasive control over Ashutosh, the owner and operator of the South Freeway Motel 6. Thus, throughout the Relevant Trafficking Period, Ashutosh was acting as an agent of G6 Hospitality.

5.13 For instance, G6 Hospitality, LLC exercised control over Ashutosh throughout the Relevant Trafficking Period by: (1) controlling online and in-person mandated training programs; (2) controlling guest reservation and check-in processes; (3) designating approved vendors; (4) requiring Ashutosh to sign a technology agreement that controlled the brands and software; (5) mandating staffing levels; (6) establishing detailed job descriptions; (7) creating hiring requirements; (8) providing benefits for Ashutosh employees; (9) controlling channels for consumer complaints; (10) managing guest information and analyzing data; (11) requiring certain insurance; (12) conducting random inspections; and (13) implementing operations reports. Additionally, based upon information and belief, G6 Hospitality, LLC implemented anti–trafficking policies, practices, training, and education for franchisees like Ashutosh and their employees and created a hotline for hotel staff of franchisees like Ashutosh to report trafficking.

5.14 For these reasons, the Wyndham Franchisor Defendants (Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, LLC, and Wyndham Hotels & Resorts, Inc.) and G6 Hospitality, LLC are vicariously liable for Harayatana and Ashutosh's TVPRA violations during the Relevant Trafficking Period.

**3. Premises Liability Claim Against Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh.**

5.15 Plaintiff brings a premises liability claim against Defendants Sneha Corporation,

Fort Worth Hospitality, Harayatana, and Ashutosh under Texas law. In Texas, a property owner owes a duty to use reasonable care to protect invitees from "imminent assaultive conduct" on its premises under the following conditions. First, the likelihood and magnitude of the risk of harm reaches an unreasonable level. Second, the risk of harm is apparent to the property owner. And third, the risk of harm arose under circumstances where the property owner had readily available opportunities to reduce it. *Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 770 (Tex. 2010).

5.16 In this action, all three (3) *Del Lago* factors are clearly satisfied. First, based on the numerous human trafficking "red flags" observed at the Subject Hotels during the Relevant Trafficking Period, the likelihood and magnitude of harm associated with human trafficking and forced commercial sex acts rose to an unreasonable level. Second, these "red flags" made it apparent to Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh that human trafficking and related imminent assaultive conduct were occurring or were likely to occur at the South Freeway Delux Inn, Super 7, Super 8, and Motel 6.[108] Third, given the repeated and ongoing nature of the trafficking activity—including activity occurring over multiple days at each Subject Hotel during an approximately 5 month period—Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh had a readily available opportunity to reduce or prevent the risk of harm to C.C. during the Relevant Trafficking Period but failed to do so. Lastly, Sneha Corporation and Fort Worth Hospitality further increased the risk of harm to trafficked women like C.C. by participating in commercial sex acts occurring on hotel property, rather than taking steps to prevent or report the unlawful activity. *See supra* pp. 9–15.

5.17 Plaintiff's substantial physical injuries, unimaginable psychological harm, and

---

[108]For instance, "heavy foot traffic of adult men visiting rooms at all hours for short durations" and "visible, prominent bruising" are clear indicators that forced commercial sex acts—*i.e.*, imminent assaultive conduct—were both occurring and about to occur on hotel property. *See supra* ¶ 4.5; *Del Lago*, 307 S.W.3d at 770 (verbal hostilities at the Del Lago resort bar went on for about 90 minutes before the fight/dangerous condition at issue occurred).

resulting damages were proximately caused by the unreasonably dangerous condition of being trafficked at the Subject Hotels during the Relevant Trafficking Period. Accordingly, Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh are jointly and severally liable for C.C.'s damages under Texas premises liability law. *See Lee Lewis Const., Inc. v. Harrison,* 70 S.W.3d 778, 784 (Tex. 2001) ("More than one act can be a proximate cause of the same injury.").

**4. Negligent Hiring, Supervision, Training, or Retention Claim Against Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh.**

5.18 Plaintiff brings a negligent hiring, supervising, training, or retention claim under Texas law against Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh. *See generally Moore Freight Serv. v. Munoz,* 545 S.W.3d 85, 98 (Tex. App.—El Paso 2017, pet. denied) (elements of a negligent hiring, supervision, or retention claim); *Allsup's Convenience Stores v. Warren*, 934 S.W.2d 433, 437 (Tex. App.—Amarillo 1996, writ denied) (discussing a plaintiff's evidentiary burden in a negligent training case). Throughout the Relevant Trafficking Period, these Defendants had duties to exercise ordinary care, meaning the degree of care that would be used by hotel owners and hotel operators of ordinary prudence under the same or similar circumstances, in hiring, supervising, training, and retaining its employees. Upon information and belief, Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh breached these duties in the following ways:

a. Failing to exercise ordinary care in investigating the competence and qualifications of prospective employees regarding the identification of human trafficking, a serious criminal activity commonly observed at hotels, and the reporting of such criminal activity to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline.

b. Failing to exercise ordinary care in supervising employees to ensure they adequately identified human trafficking, a serious criminal activity commonly observed at hotels, and reported such criminal activity to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline.

c. Failing to use ordinary care in training employees how to spot the signs of and help prevent human trafficking. More specifically, failing to exercise ordinary care in training employees to recognize indicators of human trafficking occurring on hotel property, help prevent it, and report suspected human trafficking occurring on hotel property to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline.

d. Failing to exercise ordinary care by retaining employees who were incompetent in identifying human trafficking, a serious criminal activity commonly observed at hotels, and reporting such criminal activity to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline.

e. Failing to exercise ordinary care by retaining employees who were inadequately trained to recognize, help prevent, and report human trafficking occurring on hotel property to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline.

f. Failing to exercise ordinary care in supervising employees to ensure that (1) open and obvious human trafficking on hotel property and (2) failing to report such activity to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline was prohibited and unacceptable conduct.

g. Failing to exercise ordinary care in training employees that (1) open and obvious human trafficking on hotel property and (2) failing to report such activity to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline was prohibited and unacceptable conduct.

h. Failing to exercise ordinary care by retaining employees who (1) permitted open and obvious human trafficking on hotel property during the Relevant Trafficking Period and (2) failed to report such activity to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline.

5.19 Regarding Sneha Corporation and Fort Worth Hospitality specifically, upon information and belief, these Defendants further breached their duties by:

a. Failing to exercise ordinary care in conducting criminal background checks on prospective employees whose job duties at a hotel created a foreseeable risk that human trafficking could occur and that such employees could exploit and participate in the illegal activity.

b. Failing to exercise ordinary care in supervising employees to ensure that (1) open and obvious human trafficking on hotel property; (2) failing to report such activity to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline; and (3) personally participating in commercial sex acts on hotel property was prohibited and unacceptable conduct.

c. Failing to exercise ordinary care in training employees that (1) permitting open and obvious human trafficking on hotel property; (2) failing to report such activity to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline; and (3) personally participating in commercial sex acts on hotel property was prohibited and unacceptable conduct.

d. Failing to exercise ordinary care by retaining employees who (1) permitted open and obvious human trafficking on hotel property during the Relevant Trafficking Period; (2) failed to report such activity to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline; and (3) personally participated in commercial sex acts on hotel property.

5.20 Plaintiff's substantial physical injuries, unimaginable psychological harm, and resulting damages were proximately caused by these acts and omissions. Accordingly, Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh are jointly and severally liable for C.C.'s damages under Texas negligence law. *See Lee Lewis Const., Inc,,* 70 S.W.3d at 784.

**5. Gross Negligence Claim Against Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh.**

5.21 Lastly, Plaintiff brings a gross negligence claim under Texas law against Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh. The acts and omissions described throughout this Complaint show that, during the Relevant Trafficking Period, these Defendants had actual, subjective awareness of the extreme risk of human trafficking – which objectively involves an extreme risk of severe injury, including repeated physical assaults by C.C.'s primary trafficker and sexual assault during forced commercial sex acts. *See supra* pp. 9–15. Nevertheless, these Defendants proceeded with conscious indifference to the rights, safety, or

welfare of trafficked women like C.C. during the Relevant Trafficking Period by failing to report the obvious and readily apparent criminal activity to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline. And, in the case of Defendants Sneha Corporation and Fort Worth Hospitality, by allowing hotel staff and management to participate in commercial sex acts. *See supra* ¶¶¶ 4.6–4.8.

5.22 Plaintiff's substantial physical injuries, unimaginable psychological harm, and resulting damages were proximately caused by these extreme acts and omissions – which constitute gross negligence under Texas law. *See Lee Lewis Const., Inc,* 70 S.W.3d at 784; TEX. CIV. PRAC. & REM. CODE ANN. §§ 41.001(11); 41.003(a)(3). Additionally, such gross negligence may be imputed to Defendants Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh on one or more of the following independent grounds:

a. These Defendants authorized the grossly negligent acts and omissions described herein and the manner in which they were performed.

b. These Defendants ratified or approved the grossly negligent acts and omissions described herein.

c. A vice principal or manager of these Defendants ratified or approved the grossly negligent acts and omissions described herein.

d. Staff and management employed by these Defendants, who failed to report the obvious and readily apparent criminal activity to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline, during the Relevant Trafficking Period were vice principals or managerial employees acting within the course and scope of their employment.

e. Staff and management employed by these Defendants, who failed to report the obvious and readily apparent criminal activity to law enforcement and/or reputable anti-trafficking organizations like the National Human Trafficking Hotline, during the Relevant Trafficking Period were unfit, and these Defendants were reckless in employing or retaining them.

f. Staff and management employed by Sneha Corporation and Fort Worth Hospitality, who participated in commercial sex acts during the Relevant Trafficking Period, were unfit, and those Defendants were reckless in employing or retaining them.

g. Staff and management employed by Sneha Corporation and Fort Worth Hospitality, who participated in commercial sex acts during the Relevant Trafficking Period, were vice principals or managerial employees acting within the course and scope of their employment.

5.23 For these reasons, Plaintiff may recover exemplary damages from Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(3).

## VI.
## DAMAGES

6.1 Plaintiff Jane Doe (C.C.) seeks the following damages, in amounts to be proven at trial, from Defendants, who may be held jointly and severally liable, to compensate for her injuries:

a. Physical pain sustained in the past.

b. Physical pain that, in reasonably probability, Plaintiff will sustain in the future.

c. Mental anguish sustained in the past.

d. Mental anguish that, in reasonable probability, Plaintiff will sustain in the future.

e. Disfigurement sustained in the past.

f. Physical impairment sustained in the past.

g. Physical impairment that, in reasonable probability, Plaintiff will sustain in the future.

h. All costs incurred by C.C., or reasonably projected to be incurred by C.C., in the future, as a proximate result of the offenses committed against her.[109] These costs include, but are not necessarily limited to, the following:

- Loss of earning capacity sustained in the past.

- Loss of earning capacity that, in reasonable probability, Plaintiff will sustain in the future.

[109] *See United States v. Anthony,* 22 F.4th 943, 946 (10th Cir. 2022).

- Medical care expenses incurred in the past.
- Medical care expenses that, in reasonable probability, Plaintiff will incur in the future.

i. Reasonable attorneys fees under the TVPRA.[110]

j. Exemplary/Punitive damages under the TVPRA.[111]

6.2 Additionally, because the gross negligence of Sneha Corporation, Fort Worth Hospitality, Harayatana, and Ashutosh proximately caused Plaintiff's substantial physical injuries, unimaginable psychological harm, and resulting damages, Jane Doe (C.C.) is entitled to recover exemplary/punitive damages against these Defendants in an amount and individual division deemed proper by the jury. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 41.001(11); 41.003(a)(3).

## VII.
## PRE–JUDGMENT AND POST–JUDGMENT INTEREST

7.1 Plaintiff specifically gives all parties notice that she seeks and requests prejudgment and post–judgment interest at the maximum legal rate allowed by Texas and federal law.[112]

## VIII.
## DISCOVERY RULE

8.1 To the extent any Defendant asserts an affirmative defense of limitations regarding Plaintiff's Texas law claims, Jane Doe (C.C.) invokes the discovery rule under Texas law.

8.2 At the time she was harmed, and continuing until approximately October 2024, C.C. was under the coercion and control of her trafficker, who physically abused, sexually

[110] *See* 18 U.S.C. §1595(a).
[111] *See Francisco v. Susano*, 525 F. App'x 828, 833-35 (10th Cir. 2013) (unpublished) ("We thus agree with the only other circuit to address the matter[, the Ninth Circuit,] and hold punitive damages to be available under § 1595.")
[112] In a diversity case applying Texas law, the Texas Finance Code governs pre-judgment interest and federal law applies to the calculation of post-judgment interest. *See Thompson Co. v. Paris Lakes Med. Assets, LLC*, Civil Action No. 4:20-cv-390, 2021 U.S. Dist. LEXIS 244288, at *17-19 (E.D. Tex. 2021).

assaulted, drugged, manipulated, and psychologically controlled her. Through no fault of her own, C.C. did not know, and in the exercise of reasonable diligence could not have known, both the nature of her injuries and the causal connection between those injuries and Defendants' conduct.

8.3 More specifically, during and for at least three (3) months after the Relevant Trafficking Period, the severe psychological trauma inflicted upon C.C. impaired her ability to recognize the extent, nature, and cause of her objectively verifiable injuries, which were inherently undiscoverable because of her temporary lack of mental capacity. Because of the coercion, manipulation, trauma, and psychological control exerted over her, C.C. could also not reasonably identify the extent to which Defendants financially benefited from, facilitated, and participated in her trafficking as described in this Complaint both during and for at least three (3) months after the Relevant Trafficking Period.

8.4 This lack of information and diminished ability to recognize the nature, extent, and cause of her injuries was through no fault of C.C., but rather was the direct result of the severe physical abuse, psychological trauma, coercion, manipulation, and control inflicted by her traffickers, which Defendants facilitated as described throughout this Complaint. Additionally, as described herein, C.C. was lured into trafficking through fraud and deception by an associate of her primary trafficker. *See supra* §§ 4.1–4.2; *S.V. v. R.V.,* 933 S.W.2d 1, 6 (Tex. 1996) ("Fraud, we have said, in and of itself prevents running of the statute of limitations.").

## IX.
## JURY TRIAL DEMAND & PRAYER FOR RELIEF

9.1 Plaintiff demands a jury trial and has tendered the appropriate fee. **JURY TRIAL DEMANDED.**

9.1 **WHEREFORE**, Plaintiff brings this action against Defendants and prays that this case be set for trial before a jury and that, upon final hearing of the cause, the Court enter judgment against Defendants, jointly and severally, awarding Plaintiff as follows:

a. Actual and compensatory damages as alleged herein in an amount supported by the evidence and determined by the trier of fact.

b. Exemplary/punitive damages as alleged herein in an amount supported by the evidence and determined by the trier of fact.

c. Reasonable attorney's fees as alleged herein in an amount supported by the evidence and determined by the trier of fact.

d. Prejudgment and post-judgment interest on the judgment under the maximum legal rate allowed by Texas and federal law.

e. Court costs.

f. All such other and further relief, at law and in equity, as may be deemed appropriate.

Dated: May 22, 2026

Respectfully Submitted,

**THE CARLSON LAW FIRM, P.C.**
559 S. Interstate Hwy 35, Ste. 250
Round Rock, TX 78664
(512)-671-7277
(512)-238-0275 – Fax

By: Philip Koelsch
**Philip J. Koelsch**
Texas Bar No. 24110103
pkoelsch@carlsonattorneys.com
**Breanna Nicole Wenke D'Angelo**
bdangelo@carlsonattorneys.com
Texas Bar No. 24128504
(E.D. admission application forthcoming)

**Attorneys for Plaintiff**